**Earl E. HOWE, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**Civ. A. No. 54 C 1893.**

United States District Court
N. D. Illinois, E. D.

Oct. 17, 1958.

Horton, Davis & McCaleb, Chicago, Ill., for plaintiff.

Davis, Lindsey, Hibben & Noyes, Chicago, Ill., for defendant.

LA BUY, District Judge.

### Findings of Fact

1. This is an action, with a jury demand, by Earl E. Howe, plaintiff, against General Motors Corporation, defendant, charging infringement by defendant of U. S. Letters Patent No. 2,201,490 for "Inclined Hinge", which was issued May 21, 1940, and expired by its terms during the pendency of this action, which was filed December 17, 1954.

2. In response to a motion for more definite statement, plaintiff specified that the defendant infringed the patent in suit by the use in automobiles of the hinging structures of the following automobile models:

Front doors – 1953–54 Chevrolet
Front doors – 1953–54 Pontiac
Rear doors – 1950–51 Oldsmobile 98
Rear doors – 1950 Buick, 40, 50 and 70
Rear doors – 1951 Buick 50
Rear doors – 1951–51 Cadillac 61
Front doors – 1954–55 Oldsmobile
Front doors – 1954–55 Buick 40 and 60
Rear doors – 1955 Oldsmobile
Rear doors – 1955 Buick 40 and 60
Front doors – 1951–53 Oldsmobile Super 88
Front doors – 1951–53 Buick 40
Front doors – 1952–53 Oldsmobile 98
Front doors – 1948–49 Oldsmobile 90
Front doors – 1948–49 Cadillac 60, 61 and 62
Front doors – 1949 Buick 50 and 70
Rear doors – 1950–53 Buick 50 and 70
Rear doors – 1950–53 Cadillac 60 and 62
Front doors – 1954–55 Buick 50 and 70
Front doors – 1954 Cadillac 60 and 62
Front doors – 1955 Cadillac 62
Front doors – 1955 Cadillac 60
Front doors – 1948–49 Cadillac 75
Rear doors – 1950–51 Cadillac 75
Front doors – 1954–55 Cadillac 75
1948–1955 Chevrolet trucks
1948–1955 GMC trucks

---

3. The claims charged to be infringed with respect to each of such models as shown in blueprints filed by defendant are specified in plaintiff's more definite statement.

4. The Howe patent in suit is directed to a gooseneck hinge of the pintle or hinge pin type for swingingly supporting a door of an automobile body from a curved body wall (that is, one with tumble-in), with a double inclination of the hinge axis to compensate for the tumble-in angle of the body so that the door can swing in a substantially horizontal arc. All of the claims of the Howe patent in suit are limited to a concealed hinge for supporting a door on a curved or inclined wall with the axis of the hinge pin having a double inclination so that the door in opening and closing swings through a substantially horizontal arc. The patent discloses a unitary gooseneck hinge which supports the door, Figure 5 showing a double hinge having dual or separate hinge pins. Claims 3 and 4 are specifically limited to a gooseneck type of hinge. The gooseneck hinge disclosed in the Howe patent supports the door so that when the door is swung open it moves to a swing-out position; that is, in addition to swinging away from the body, it swings forwardly and provides much greater leg room for entrance to and exit from the body.

5. Upon motion of defendant, it was ordered on June 6, 1956 that the equitable defense of laches and estoppel asserted in Paragraph 10 of defendant's an-

swer be tried separately before the Court in advance of the jury trial of legal issues of validity and infringement. The trial of such equitable defense commenced before the Court on January 30, 1958 and was concluded on February 5, 1958. Since that time, both parties have filed briefs and proposed findings of fact and conclusions of law with the Court.

6. Earl E. Howe is now the owner of the patent in suit and of all rights thereunder, and he was the owner of the patent and such rights at the time this action was filed.

7. Plaintiff, Earl E. Howe, did not own the patent in suit and all of the rights thereunder during portions of its term, including the period from the time of the issuance of the patent until final disposition of the suit between plaintiff and Atwood Vacuum Machine Company which occurred in 1943, and in the period between June 16, 1952 and October 6, 1954 when the patent in suit and all rights thereunder were owned by a joint venture, Howe Associates.

8. On March 16, 1938, Mr. Howe granted an option to The Metal Specialty Company, an Ohio corporation, to obtain an exclusive license under his patent rights, including those resulting in the patent in suit and an exclusive license pursuant to the terms of such option agreement was executed on May 24, 1939, at which time the application for the patent in suit was pending in the United States Patent Office. The option and license to The Metal Specialty Company (Pl. Ex. 71) gave to the licensee the right to grant a sub-license and, on April 19, 1939, with Howe's consent, a license (Pl. Ex. 6) was granted to Atwood Vacuum Machine Company. This agreement in substance divided the license rights from Howe between The Metal Specialty Company and Atwood Vacuum Machine Company. Subsequently, because of disputes between these two licensees, The Metal Specialty Company, on September 24, 1940 (Pl. Ex. 70) assigned to Mr. Howe all of its rights under the Atwood agreement (Pl. Ex. 6) and The Metal Specialty

Company was released by Mr. Howe from its license agreement (Pl. Ex. 71). Atwood Vacuum Machine Company, however, continued as a licensee under the patent in suit, which had then issued, and a dispute arose between the Atwood Company and Mr. Howe relative to payment of royalties under the agreement. An action was filed by Mr. Howe against the Atwood Company for royalties and, after the suit was pending, the Atwood Company, on March 21, 1941, gave notice to Mr. Howe that it no longer considered itself a licensee under the license agreement. The Howe v. Atwood action pending in the United States District Court at Detroit, Michigan was decided October 7, 1942 by The Hon. Frank A. Picard, United States District Judge, his opinion thereon being published in 47 F.Supp. 979. In this opinion and in the judgment, it was held that the Atwood license was terminated thirty days after its letter of March 21, 1941, i. e., on April 20, 1941. After Judge Picard's opinion of October 7, 1942, further steps relative to appeal or final disposition of the Howe v. Atwood case were carried on and the case was finally settled by the parties without an appeal or an accounting by an agreement of settlement.

9. Mr. Howe was not possessed of the entire right, title and interest in, to and under the patent in suit from a time prior to its issuance until some time in February, 1943 when the case of Howe v. Atwood was finally disposed of.

10. In February, 1943 and for some time prior thereto, World War II was in progress and General Motors Corporation was not engaged in the production of passenger motor vehicles because of restrictions imposed by the Government, required by war purposes. While World War II terminated in August, 1945, General Motors Corporation did not resume the general production of automobiles until some time in 1946 because of a long strike of General Motors Corporation employees in the early part of 1946.

11. General Motors Corporation's first production of automobiles after the

war did not involve new model automobiles until production commenced on the 1947 models.

12. On June 16, 1952, Mr. Howe entered into an agreement (Def. Ex. 99) with Ray W. Springer and the Detroit law firm of Toy and Toy, organizing a joint venture between them, one of the purposes of which was to obtain compensation for infringements of Howe patents, including the patent in suit. On June 16, 1952, Mr. Howe assigned the patent in suit and all rights of action thereunder to the joint venture (Def. Ex. 100). On October 6, 1954, the assignment to the joint venture was revoked and the joint venture agreement, including a license (Def. Ex. 101) to Howe Hinge Company was terminated by agreement between the parties thereto (Def. Ex. 102).

13. Earl E. Howe was not the owner of the patent in suit and of all the rights thereunder, including the rights to recover for infringement thereof, during the period commencing June 16, 1952 and ending October 6, 1954.

14. After October 6, 1954 when Earl E. Howe reacquired ownership of the patent in suit and of all rights thereunder, preparations were made for the filing of the present action, which was filed on December 17, 1954.

15. The defense of laches and estoppel as set forth in Paragraph 10 of defendant's answer asserts that as a result of plaintiff's silence, acquiescence and lack of diligence during a period of more than fourteen years:

(1) Defendant has been led to believe that plaintiff has abandoned his charge of infringement and did not consider the hinged structures of defendant to violate any of his patent rights;

(2) Defendant has materially changed its position during said period;

(3) Defendant has been placed in a materially disadvantageous and prejudicial position because:

(a) Witnesses having knowledge of facts pertinent to defendant's defense have died or otherwise become unavailable; and

(b) Documents and physical structures in support of said defenses have been destroyed, lost or misplaced.

16. The particular defense referred to in Paragraph 10 of the answer which defendant contends has been affected by the delay in filing this action is the so-called "B.O.P. Defense" of prior invention by General Motors Corporation of the subject matter of the patent in suit.

17. During 1937 and 1938 and subsequently before the patent in suit issued, Earl E. Howe discussed automobile door hinges and hinging problems with a number of officers and employees of General Motors Corporation, making and demonstrating a number of models and drawings and even preparing and submitting full-size models for automobile door installations. The parties are in dispute as to the precise dates of many of these meetings, but there is no evidence that in these discussions in 1937 and 1938 General Motors Corporation asserted to Mr. Howe that his developments in door hinging had been previously invented by General Motors Corporation or someone working for the defendant.

18. The application for the patent in suit was filed January 9, 1939 and it discloses door hinging means which are completely concealed from the exterior of the automobile when the doors are closed. All of the claims of the patent call for a concealed hinge "for supporting" or "adapted to support" a door.

19. The hinging means of the so-called "B.O.P. Defense" were first made available to the public by General Motors Corporation in the fall of 1938 upon the so-called 1939 automobile models. In such cars, the front doors were supported by two hinge portions, the lower one of such portions being concealed when the door was closed and the upper portion being exposed and protruding beyond the plane of the car body at that point.

20. On the 1939 B.O.P. automobile bodies, both the concealed hinge portion

and the exposed hinge portion are required to support a door and no such 1939 automobiles were sold by defendant without both such hinging portions being used.

21. On June 21, 1940, one month after the patent in suit issued, plaintiff gave notice of infringement of the patent to General Motors Corporation. Subsequent notices of infringement were made on a number of occasions in 1940, 1941 and 1942. General Motors Corporation was fully aware of the Howe v. Atwood litigation. After General Motors Corporation resumed production of passenger automobiles following World War II, additional notices of infringement were given to it in 1947, 1949, 1951 and 1952.

22. The plaintiff was not silent in asserting to General Motors Corporation his charge that it was infringing the patent in suit during the period prior to the filing of this action and there is no substantial evidence that defendant at any time was led to believe that plaintiff had abandoned his charge of infringement or that plaintiff did not consider concealed hinge structures of defendant to violate plaintiff's patent rights.

23. In 1949, General Motors Corporation did not consider that plaintiff had been silent or that he had abandoned his charge of infringement for it was recognized in their own records of September 2, 1949 (Pl. Ex. 88) that "Howe has been persistent" in asserting his claims. An officer of General Motors Corporation on September 20, 1949 wrote to Mr. Howe, again rejecting any settlement, but making no reference whatsoever to any charge of laches, neglect, silence or delay on the part of Mr. Howe (Def. Ex. 49–50).

24. In 1953 and 1954, General Motors Corporation advertised the 1954 Buick automobile, extolling the advantages of concealed swing-out hinges and the matter of the Howe patent was sufficiently in the mind of General Motors Corporation at that time that the Head of its

Patent Section, Mr. Willits, had employees of the Patent Department of General Motors Corporation again look into the Howe hinge matter.

25. The fact is sustained by substantial evidence that General Motors Corporation was never lulled into any belief that the plaintiff had either abandoned his charge of infringement against General Motors Corporation or had reached a decision that the hinge structures of defendant did not violate his patent rights.

26. From the time the Howe patent issued in 1940, up to the present time, General Motors Corporation has taken the position that the Howe patent in suit is invalid and it has at all times continued to manufacture a series of changed and altered hinging means designed for each new model automobile which it has produced with a disregard for the notices of infringement sent to it by Mr. Howe because of its stated belief that the Howe patent is invalid rather than because of any belief by General Motors Corporation that plaintiff either abandoned his charge of infringement or had decided that the hinge structures of defendant did not infringe his patent rights.

27. Each year that General Motors Corporation has changed to a new model of an automobile to be offered for sale to the public, the design of hinging means for the doors of such models has been a new and independent undertaking since it is stated by General Motors Corporation that replacement hinges must be made for each model automobile even though the hinge elements may appear to be closely similar.

28. The delay of plaintiff in filing an action charging infringement by a 1949 automobile model is a different and separate delay from a charge of infringement or action for infringement against a subsequent automobile model made by General Motors Corporation, such as a 1953 or 1954 model.

29. Defendant asserts that it has expended large sums of money for tooling,

dies and the like for the several hinging means which are charged to infringe and defendant asserts that the expenditures for such tools have resulted in a material change of its position during the period since the first hinging means charged to infringe were made. However, it appears clearly from the record that tooling costs of General Motors Corporation are amortized completely by it during the sale of each specific model automobile and that such costs have been completely amortized at the time the manufacture and sale of automobiles by General Motors Corporation has been diverted to a new model. Since the cost of tooling has been amortized and charged off against income as to every automobile car model charged to infringe in this action, such tooling costs do not represent a matter of change of position or of prejudice to the defendant resulting in any inequity in maintaining the present action.

30. The defendant contends that by the lapse of time, documents and models have been lost, witnesses have died or become unavailable and witnesses' memories have become dimmed or confused. It has not been shown by the defendant that any dead or unavailable witnesses are necessary or essential and that their absence is materially prejudicial to the defense.

31. The fact that General Motors Corporation did participate in the Howe v. Atwood case establishes that during that litigation it was in no way misled into a belief that Howe was acquiescing in any infringement by General Motors Corporation which occurred prior to the war. There is no evidence to show that anything that Howe ever did or did not do lulled General Motors Corporation into a belief that it had a right to use the inventions described and claimed in the Howe patent in suit without liability therefor.

32. Because Howe had already charged and was charging defendant with infringement during the period from 1940–1942, defendant looked into and followed the Howe v. Atwood case brought by Howe in 1941 in Detroit, Michigan, against Atwood for royalties due under an agreement wherein Atwood was licensed under the Howe patent. Only hinges made by Atwood and none of defendant's hinges were covered by the license agreement. Defendant, at the request of Atwood and his attorneys, supplied some information, made suggestions and furnished some evidence, but the decision to use or not to use such information, suggestions and evidence was solely that of Atwood and his attorneys, Meder, Larwin and Wintercorn, who were under no compulsion whatsoever from defendant. Defendant was not a party to the suit or in privity with Atwood, did not contribute to the defense of the suit, had no financial interest in the outcome of the litigation, had no legal right to defend or appeal from the decree and did not control or participate in the control of the defense of that suit. The decision to settle the case and not to appeal was Atwood's sole decision. Defendant, therefore, is not estopped by the Howe v. Atwood decree of Judge Picard in favor of Howe from relying herein on its 1939 B.O.P. defense of prior invention nor is defendant guilty of any unclean hands or of any misconduct by reason of its assistance to Atwood in Howe v. Atwood and its following of that suit.

33. Material in evidence from General Motors' files and records show that General Motors recognized the likelihood of a suit by Howe and of the importance of collecting and preserving evidence; that General Motors had been repeatedly warned by its own counsel of the likelihood of a suit; that General Motors continued its infringement because of its belief that the Howe patent would not be sustained, rather than that Howe had abandoned his claim as now asserted.

34. General Motors has not shown that it has any investment which would be jeopardized by a trial of this case.

**336**

Conclusions of Law

1. The facts of record do not establish that defendant has been led to believe that plaintiff has ever abandoned his charge of infringement or that he has not considered the accused hinging means sold by defendant to infringe the patent in suit.

2. The facts of record do not establish that defendant has changed its position in any material manner such as would make it inequitable for plaintiff to prosecute this action for infringement.

3. The facts of record do not establish that delay in filing action has resulted in the loss of any material or necessary evidence, or in the death or unavailability of any necessary or essential witness.

4. The present action is based upon new and different acts of infringement by defendant which have occurred in the six years prior to the filing of this action and not before. There is no evidence which shows that such acts were committed by defendant in reliance upon any silence or acquiescence of the plaintiff and the mere lapse of time which has occurred between the commission of such acts and the filing of this action does not constitute laches.

5. The facts of record do not establish that General Motors Corporation in reliance upon acts or silence by plaintiff upon which General Motors Corporation had a reasonable right to rely was led to change its position in any way such as to create an equitable estoppel which would prevent the plaintiff from prosecuting this action.

6. Mere delay does not establish laches and the burden of sustaining the defense of laches and estoppel rests upon the party asserting such a defense. The defendant has not sustained this burden.

7. This cause shall proceed to trial on the merits of the charge of patent infringement at a date to be fixed by the Court.