Earl E. HOWE, Plaintiff,

v.

GENERAL MOTORS CORPORATION,
Defendant.

No. 54 C 1893.

United States District Court
N. D. Illinois, E. D.

April 5, 1966.

As Amended April 15, 1966.

Warren C. Horton, Horton, David & McCaleb, Chicago, Ill., E. J. Balluff, Detroit, Mich., for plaintiff.

George N. Hibben, Hibben, Noyes & Bicknell, Chicago, Ill., Arthur A. Raisch, Detroit, Mich., Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., for defendant.

ROBSON, District Judge.

## History of Litigation

This suit, filed December 17, 1954, concerning the validity and infringement of the Howe Patent No. 2,201,490, on an "Inclined Hinge," is now before the court for decision on the merits, after trial by the court. A long and tortuous background preceded this decision.

The first adjudication was that of Judge Walter J. La Buy, who in October, 1958, after hearing evidence, overruled the defense of laches and estoppel (Howe v. General Motors Corporation, 167 F. Supp. 330 (N.D.Ill.1958). Subsequently there was a jury trial in June, 1960, before Judge La Buy, which ended in a hung jury. Judge La Buy denied defendant's motion for a directed verdict without stating his reasons for the denial.

A second jury trial in April, 1961, before Judge J. Sam Perry, resulted in finding the defendant not guilty. Judge Perry vacated and set aside this finding and ordered a new trial. Following this ruling the Court of Appeals denied a petition for a writ of mandamus, or, in the alternative, for a writ of certiorari, finding no abuse of discretion in the denying of defendant's motion for a directed verdict, which motion had been taken under advisement during the course of the trial (General Motors Corporation v. Perry, 303 F.2d 544 (7th Cir. 1962)). There had also been a suit, in another district, upon a license granted by Howe at the time the application for this patent was pending, upon which license litigation ensued with an opinion in favor of patentee (Howe v. Atwood, 47 F.Supp. 979 (E.D.Mich.1942)), and which litigation ended in a settlement without appeal.

The observations of the various judges who have had occasion to comment upon the Howe patent are interesting. In the royalty suit between Howe and licensee Atwood (Howe v. Atwood, 47 F.Supp. 979 at 986 (E.D.Mich.1942)), the court said:

"* * * [I]t is the understanding of this court that the secret of the claims of the second hinge [Patent '490] lies in the fact that the inclination of the axis inwardly from the car door and longitudinally towards the front of the car is accomplished by the use of an inclined pintle built into the hinge, this inclination being compensated for by using a goose-neck hinge member varying the extent of its curvature from top to bottom."

The court goes on, at 987:

"* * * [T]he drawing accompanying the second Howe hinge shows how it could be utilized with two pintles as well as one, and incidentally one of the arguments used by defendants in limiting Howe's first patent was that his drawings did not cover a duplex (two pintle) hinge. But Howe's drawing in the second patent did—and the drawings accompanying a patent with its claims are illuminating when the question of prior art and intended coverage is at issue."

Judge La Buy in Howe v. General Motors Corporation, 167 F.Supp. 330, at 331 (N.D.Ill.1958), stated:

"* * * [The patent] is directed to a gooseneck hinge of the pintle or hinge pin type for swingingly supporting a door of an automobile body from a curved body wall (that is, one with

tumble-in), with a double inclination of the hinge axis to compensate for the tumble-in angle of the body so that the door can swing in a substantially horizontal arc. All of the claims of the Howe patent in suit are limited to a concealed hinge for supporting a door on a curved or inclined wall with the axis of the hinge pin having a double inclination so that the door in opening and closing swings through a substantially horizontal arc. The patent discloses a unitary gooseneck hinge which supports the door * * *. The gooseneck hinge disclosed in the Howe patent supports the door so that when the door is swung open it moves to a swing-out position; that is, in addition to swinging away from the body, it swings forwardly and provides much greater leg room for entrance to and exit from the body."

Judge Perry in a statement made on September 29, 1961, on a motion for an order setting aside the order of September 20, 1961, granting a new trial, said:

" * * * I will be perfectly frank with you, had it been a non-jury case *I would have found the patent good and would have found infringement,* and that is really the heart of why I granted a new trial, because I think it is my duty to give my best opinion as to what justice should ultimately be, and I thought that it was a valid patent and I thought it was infringed, and I also thought that the tremendous amount of demonstrative evidence that was presented by the defendant, the innumerable doors that were brought in, the excessive amount of evidence, did unduly influence the jury in the matter. * * * That is my honest opinion about it. * * * If I ever saw a good patent that was it. If there had been too much of a serious doubt I would not have granted a new trial by a jury. * * * It was my best judgment, and I told you my opinion as to the law and as to the facts is that there was a good patent, and that it was infringed." (Italics added.)

## Decision

This court after a careful examination of the prior proceedings reaches the unescapable conclusion that the patent is invalid because anticipated by the prior art and as one which should have been obvious to a skilled worker in that field in view of that prior art.

## Patent and Pleadings

Patent No. 2,201,490, consisting of four claims, issued May 21, 1940, upon an application filed January 9, 1939, expired May 21, 1957. Written notice of infringement was given defendant on July 10, 1942. Infringement is charged for the period from December 17, 1948, to date of the patent's expiration in 1957.

The complaint and supplement thereto charge infringement by defendant "by making and/or selling automobiles wherein the front doors of the bodies thereof are supported by concealed hinging means of the gooseneck type as covered by said Patent No. 2,201,490," and allege the damages for infringement to exceed a million dollars, and seek treble damages. An amendment to the complaint and supplemental complaint filed July 18, 1963, asked for an accounting of the damages and withdrew the demand for a jury trial.

The answer denied infringement and asserted invalidity of the patent on the ground that the invention was disclosed in prior art patents and publications, and the alleged invention had been known and reduced to practice by General Motors more than two years prior to the disclosure in the application for the Howe patent. Further, defendant asserts lack of invention; Howe's disclosure involving mere mechanical skill; the claims of the patent are vague, and they are broader than the scope of the original application and are not supported by supplemental oath of the applicant.

Howe stated in his patent that "[t]his invention relates to a concealed door hinge particularly adapted for swingably supporting a door from a curved wall, as for example, the support of an entrance door of an automobile which is curved

in direction normal to swinging movements and further, in conjunction with walls which are inclined as in the case of an automobile body having upwardly converging side walls."

The highlight of plaintiff's invention would seem to be the fact that the hinge is *completely concealed* within the body of the car thereby maintaining the trimness of body line and protection of the hinge from the elements. This is achieved on a car, the contour of which is *inwardly* inclined by having the axis of the hinge also inclined inwardly, and generally forwardly, with the result that when the door is opened it swings *in a substantially horizontal arc*. This prevents sudden closure of the car door due to force of gravity on a passenger entering or alighting.

## Stipulated Facts

The stipulation of facts filed December 30, 1963, presents these facts: Plaintiff, Earl E. Howe, is the owner of all rights under the patent in suit. An exclusive licensee, The Metal Specialty Company of Ohio, had granted a sub-license to the Atwood Vacuum Machine Company but the Metal Specialty Company assigned its rights back to Howe, who, when a dispute arose, sued the Atwood Vacuum Machine Company and had an opinion in his favor. Defendant was not a party to the Atwood litigation, but followed it. It had no control over it although it furnished some evidence therefor.

Each of defendant's hinges charged to infringe includes an upper hinge element and a lower hinge element. The claims which they allegedly infringe are stated.[1]

The stipulation of facts also sets forth the precise automobile, year, make and series, which infringes each of the claims, and further gives the exact inclination of the hinge axis, all of which

are inclined inwardly, and some of them are specified to be also inclined forwardly or rearwardly. It is also stated whether the hinge occurs on the front or rear doors. The exact angle of inclination is given in each instance.

The prior art patents on which defendant relies are:

Richard, No. 1,325,109 issued December 16, 1919 (concealed hinge but pin vertical).

Smith, No. 2,050,469 issued August 11, 1936 (not concealed but no pins).

Carr, No. 2,114,830 issued April 19, 1938 (means not concealed on inside).

Soss, No. 1,363,370 issued December 28, 1920 (not limited to autos and inclined walls).

French patent (Mouche), No. 537,011 issued in 1922.

A publication by von J. Feldwabel, published in Germany in 1920, and other publications are also relied on as prior art.

### Discussion of Prior Art and Contentions in Respect Thereto

#### I. Mouche Patent

As to the prior art, the French Mouche Patent No. 537,011 was applied for June 4, 1921, and granted February 23, 1922. Mouche states (as revealed by the translation):

"The present invention has for object a hinge device applicable especially to doors, the profile of which vertically affects a more or less pronounced curvature which corresponds exactly to the profile of the wall having the door, such as, for example, the doors or carriage doors of automobiles, horse-drawn vehicles, cars, etc.

[1]. Nos. 12 (12–U & 12–L), 14 (14–U & 12–L), 18 (18–U & 18–L), 26 (12–U & 12–L), and 36 (12–U & 12–L), charged to infringe Claims 1 and 2.
Nos. 19 (19–U & 19–L), 33 (33–U & 33–L), 29 (27–U & 31–L), 31 (27–U & 31–L), 40 (40–U & 41–L), and 42 (42–U & 42–L), charged to infringe Claims 1, 2, 3 and 4.
Nos. 27 (27–U & 27–L), 37 (27–U & 27–L), B (302–U & 302–L), G (307–U & 302–L), I (309–U & 302–L), and L (312–U & 312–L), are all charged to infringe Claim 4.

"By its disposition this system compels the door on which it is mounted to expand during the opening and closing while preserving a constantly vertical position. Furthermore, this hinge takes up no external space being lodged in the thickness of the panels of the partition and of the door on which it is mounted."

Plaintiff reads this foreign patent in the light of the legal principle that "[t]he law is very well established that 'a foreign patent is to be measured as anticipatory, not by what might have been made out of it, but by what is clearly and definitely expressed in it.' Borg-Warner Corp. v. Mall Tool Co., [7 Cir.], 220 F.2d 803, 805."

Plaintiff points out that the Mouche patent called for an *outward and rearward* inclination of the axis, and pertained to a *tumble-out* body. The upper hinge is smaller in curvature than the lower hinge. Mouche showed a wooden door and described pintles out of alignment, and stressed the vertical position of the axis. There was no glass in the Mouche door. Carl E. Hedeen, General Director of Engineering of the Fisher Body Division of General Motors Corporation, testified that the Mouche drawing shows a compound angularity of the hinge is required. No vehicle was built with the Mouche hinge. Plaintiff asserts that the Mouche patent discloses an inoperative structure, and Mouche did not recognize or solve the problem covered by the Howe patent.

On the other hand, defendant argues that the Mouche patent discloses "all of the features of the Howe patent," being similar in structure, mode of operation and result, with the same problem and the same result. Further, if Mouche is to be held inoperative because the door does not open to a full 90° so must Howe be held inoperative. The Mouche patent, although a foreign patent, is applicable because its disclosure is clearly expressed to a man skilled in the art.

## II. The Carr Patent

The Carr Patent No. 2,114,830, applied for January 15, 1935, and issued April 19, 1938, pertained to "an improved vehicle body of the convertible type which is streamlined both when the top and windows are raised and when both the top and windows are lowered. * * *" Plaintiff differentiates the Carr patent in that Carr's hinging means are "concealed" but only in the sense that they are covered or screened from view by *additional structure*. They are not *within* the contour of the body. The hinging means near the top of the door extends to a substantial extent inside the body, as does the lower hinge means. *The hinge is not inclined* in any manner as described by Howe. The Carr hinge is at the *rear* of the door, and if at the front edge, both top and bottom of the hinge means would be outside the body contour.

Mr. Hedeen stated that Carr showed a tumble-in body and describes a concealed hinge of gooseneck variety and inclination of axis rearwardly, and inwardly or outwardly, and glass in the doors. On cross-examination, he stated he never knew a car built like that shown in the Carr patent, which covered a single door hinged at the rear.

Defendant points out that Carr teaches that the hinge axis may be inclined inwardly as well as rearwardly which is the same as the compensating hinge axis inclination on the rear door in Figure 1 of the Howe patent. Carr's upper gooseneck hinge is of greater extent at the top than at the bottom so as to be of tapered shape like Howe.

## III. The Richard Patent

Plaintiff distinguishes the Richard Patent No. 1,325,109, which issued December 16, 1919, on an application filed March 10, 1919, for a "Hinge Construction" as disclosing a hinge for a touring car and not a car with an *inclined* body. The axis of the pintles is vertical and there is no inclination whatsoever either described or shown. The hinge arms at the top and bottom of the door have the *same* reach. The hinge is *exposed* on the inside of the body. No car was ever made using the Richard hinge. Mr. He-

deen testified that since the wall or door edge was vertical in Richard and the hinge axis vertical, constant sized hinges could be used. The drawing discloses a curved body but not one inclined inwardly from the base up, rather a symmetrical curvature so that the axes of the hinges are in vertical alignment.

Defendant states that "Richard's body styling did not require an inclined axis" but that the problem he solved was to provide *concealed* hinging which would throw a curved door out away from the body at top and bottom, and Howe's hinge does so in a similar manner.

### IV. 1917 Chevrolet

The 1917 Chevrolet, cited as anticipatory, had *concealed* hinges, Mr. Hedeen testified. The door axis was inclined *outwardly*, with the result the door fell on opening, in the neighborhood of an inch, which he considered to be a substantially horizontal arc. Mr. Hedeen admitted the 1917 Chevrolet door was light weight, with axis inclined outwardly, not forwardly or rearwardly, and had a *tumble-out* side. This 1917 Chevrolet, defendant maintains had its front doors supported by means of separate, spaced, concealed hinges of the U-shaped, gooseneck type secured to the edge of the door and which permitted the doors to swing in a horizontal arc.

### V. The 1924 Oakland

Plaintiff dispels anticipation by the defendant's 1924 Oakland car because *outside exposed hinges* were found to be necessary when using a full-sized door on a closed automobile body. Its body was built on a wooden frame and it was *straight and boxy.*

Mr. Hedeen testified as to the 1924 Oakland touring car that it was a unitary type of hinging, gooseneck, concealed from both the inside and outside the body, which was a tumble-out body and the hinge axis inclined outwardly and forwardly. On cross-examination, Mr. Hedeen stated that the doors of the closed bodies of the 1924 Oakland were *light* doors with three outside hinges all *ex-*

*posed.* He also stated that such exposed type of hinge could not be used on modern automobiles because perfectly vertical pillars are not used.

Defendant relies on the fact the 1924–1925 Oakland hinge had "additive hinge inclinations" with the same structure, mode of operation and result as defendant's, and therefore if defendant infringes, the Oakland hinge anticipates and invalidates Howe (Miller v. Eagle Manufacturing Co., 151 U.S. 186, 200, 14 S.Ct. 310, 38 L.Ed. 121 (1894)).

### VI. The Soss Patent

The Soss patent, applied for June 17, 1920, and issued December 28, 1920, was for a "hinge." It disclosed gooseneck hinges but made no reference to automobiles. When it was applied for in 1920, closed automobiles were not in production except those which were custom made. Plaintiff points out there was no angularity in the disposition of the axis and there was no divergence between the top reach and the lower reach even if two hinges were used.

Defendant insists that its hinge is quite similar to the Soss hinge and therefore follows the prior art.

### VII. The Feldwabel publication

The 1920 Feldwabel publication pertained to a "Door Installation on a Touring Car with Concealed Hinges." Plaintiff distinguishes this publication by pointing out that Feldwabel found it necessary to provide an *outside exposed hinge* for all car models except the light weight half-doors or gates to be used on carriages or touring cars. There was a fully exposed pintle. Plaintiff also points out that Feldwabel refers to hinging on the half-doors, expressly stating that the hinges will not be the same as on full doors. Mr. Hedeen testified that the Feldwabel door was a very light, narrow door with no glass in it. The hinge axis in Feldwabel inclined outwardly.

Defendant maintains that Feldwabel's structure is substantially the same as Howe's and the mode of operation and

the result are the same. They have the same "cone effect." Feldwabel discloses two spaced, concealed, gooseneck hinges for supporting a door from a curved body pillar in an automobile body having an outwardly inclined wall; and outwardly inclined hinge pin axis which would cause the door to drop as it is opened; a rearwardly inclined hinge pin axis which would cause the door to rise and which therefore compensates for and subtracts from the outward inclination so that the door swings in a substantially horizontal arc. He also stated the hinge axis is inclined with respect to the adjacent edge of the door; gravity biases movement of the door toward a closed position; the hinge arms are of different lengths, the lower hinge arm being of a greater length than the upper hinge arm and each hinge arm being tapered from top to bottom. He also testified that in open position the gooseneck hinges hold the door away from the curved body, the lower or longer hinge holding the door further away from the body.

Mr. Hedeen in effect testified that Feldwabel disclosed Howe's principle in reverse, the auto body being curved outwardly. Hedeen further testified there was no difference in technique between hinging of touring cars and open roadsters and the accused sedans. He stated that the only difference in having glass is the requirement of stronger hinges.

## VIII. 35 XP 510 Drawing

Plaintiff contends that the drawing 35 XP 510, dated September 23, 1935, which was as to an experimental structure evolved by experts at General Motors, showed the axis was inclined inwardly of the car body at the top hinge and outwardly of the car body at the lower hinge, with the top hinge *exposed inside* the body and the lower hinge *exposed outside* the body. It was experimental and abandoned. It was never used and never went into production, Mr. Hedeen testified. He also testified the drawing showed a concealed hinge, which a model demonstrated to be a compensating hinge axis. The hinge was inclosed on the inside under the instrument panel, but the lower hinge was exposed. He said all of Howe's disclosures were found in the *upper* hinge of 35 XP 510.

Defendant maintains that 35 XP 510 was not purely experimental, but in fact was the forerunner of the commercial 1939 B.O.P. The September 23, 1935, date of 35 XP 510 is prior to plaintiff's earliest date of conception of June 7, 1937, and therefore supports defendant's defense of prior invention under 35 U.S.C. § 102(g), and it is not necessary that the disclosure have been made public. Nor, defendant contends, did plaintiff prove a reduction to practice prior to his filing date, and a completed act of invention requires a reduction to practice by building and successfully testing the hinging after conception (Automatic Weighing Machine Co. v. Pneumatic Scale Corporation, 1 Cir., 166 F. 288 (1909)).

## IX. The 1939 "B.O.P." Defense

The 1939 "B.O.P." (abbreviation for Buick, Oldsmobile and Pontiac for 1939) hinging means is claimed by defendant to anticipate or invalidate the patent in suit. These means were developed by General Motors' engineers and were manufactured early in 1938 by the Ternstedt Division and were first installed in the 1939 model in the spring of 1938 and the test bodies were shipped by Fisher Body commencing in March, 1938, to Buick, Oldsmobile, Pontiac and Cadillac Divisions of General Motors for assembly into 1939 B.O.P. test cars. A test car was driven at the Milford proving grounds in July, 1938. Defendant's 1939 year model cars were first disclosed and sold to the public some time in September 1938.

The stipulation, in addition to the above, states:

"The '1939 BOP' models had front-door hinging means including an upper concealed hinge element and a lower hinge element which was not concealed, but extended beyond the contour of the body of such automobile models. The

hinge axis on '1939 BOP' models extended between the upper concealed hinge portion and the lower unconcealed hinge portion and a portion of said hinge axis line extended outside of the body contour in such models."

As to the 1939 B.O.P. anticipation of the patent, defendant asserts the Howe patent claims are broadly worded to "a concealed hinge" and not hinge "means" and they do not require that the concealed hinge be the sole support for the door. The patent nowhere refers to a hinge means but only a "concealed hinge." Plaintiff by so construing is reading limitations into a broad claim in order to save it from anticipation, which has been condemned by the courts (McCarty v. Lehigh Valley Railroad Co., 160 U.S. 110, 16 S.Ct. 240, 40 L.Ed. 358 (1895); Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Enterprise Railway Equipment Co. v. Pullman Standard Car Mfg. Co., 95 F.2d 17 (7th Cir. 1938); Permutit Co. v. Graver Corporation, 7 Cir., 43 F.2d 898 (1930)).

Mr. Hedeen testified that the 1939 B.O.P. showed forward and inward inclination of hinge axis with gooseneck hinges, with the upper hinge concealed and the lower hinge exposed, and with a "certain amount" of tumble-in condition.

Defendant states that the 1939 upper hinge is a "concealed hinge for supporting a door" as described in Claim 1 of Howe, even though it may not be the sole support. The 1939 upper concealed hinge is located at the same place as Howe's hinge. Further, Howe, by letter of July 10, 1942, charged infringement of his patent by that upper 1939 hinge.

■ Defendant points out that a patentee may not in one suit achieve a pronouncement of broad validity of his patent and in a subsequent suit seek to avoid anticipation by narrowing the scope (Smith v. Hall, 301 U.S. 216, 57 S.Ct. 711, 81 L.Ed. 1049 (1937)).

The 1939 B.O.P. structure of General Motors, plaintiff claims, is simply an example of the type of outside exposed hinging which Smith described as typical and inadequate and presented the problem which patentee solved, and to which defendant turned after a year and a half of use of the 1939 B.O.P. structure.

The breadth of plaintiff's step of invention is supported, he maintains, by the fact that even the fashioning of the 1939 B.O.P. partially exposed, partially concealed, hinges took the skill of many hundreds of engineers several years to achieve, and was quickly abandoned in 1940 when Howe's invention became known.

The 1939 B.O.P. rear door hinging, plaintiff points out, was disclaimed early in this suit in the proceeding before Judge La Buy, as having anything to do with the Howe '490 patent. In any event, the 1939 B.O.P. rear door hinging was quite unsatisfactory, too weak, and sagged. The upper portion of the hinge alone could not support the door. It had no double inclination, and its inclination inwardly was of but two degrees. It had no divergence between the top of the hinge and the bottom of the hinge with different reach at the top than at the bottom. No 1939 car was sold without both hinges, Judge La Buy found. The 1939 B.O.P. structure was abandoned by General Motors, and is not charged to infringe. Cessation of use of the 1939 B.O.P. hinges was due to changes in body styling, defendant points out.

The 1939 B.O.P. structures do not meet the terms of the Howe patent, plaintiff insists, because not only are they exposed hinge means, but the hinging comprises an upper gooseneck type hinge and a lower butt hinge, exposed beyond the contour of the body.

Plaintiff contends that the 1939 B.O.P. prior *knowledge* defense is inutile because, being presented under 35 U.S.C. § 102(a), plaintiff could not have had the requisite knowledge of the conception of the 1939 B.O.P. structure, it having been kept secret until its disclosure to the public on the sale of the 1939 model cars in the late fall of 1938, which was after Howe's disclosure (Gayler v. Wilder, 10

How. 477, 13 L.Ed 504; Rem-Cru Titanium, Inc. v. Watson, 152 F.Supp. 282 (D.D.C.1957)).

In discussing the B.O.P. defense, Judge La Buy stated, at 333–334 (167 F.Supp. 330):

"The hinging means of the so-called 'B.O.P. Defense' were first made available to the public by General Motors Corporation in the fall of 1938 upon the so-called 1939 automobile models. In such cars, the front doors were supported by two hinge portions, the lower one of such portions being concealed when the door was closed and the upper portion being exposed and protruding beyond the plane of the car body at that point.

"On the 1939 B.O.P. automobile bodies, both the concealed hinge portion and the exposed hinge portion are required to support a door and no such 1939 automobiles were sold by defendant without both such hinging portions being used."

### X. The Smith Patent

The Smith Patent No. 2,050,469, plaintiff points out, discloses the *problem* solved by Howe. It states:

"It is common practice to use hinges of the pintle type in mounting the doors on vehicle bodies, but such hinges require the pintles to be in alignment, and on the modern vehicle bodies that usually means one or more of the hinges *must extend laterally outward* beyond the surface of the body to such an extent as to afford considerable air resistance to the rapid transit of the vehicle." (Italics supplied.)

Smith, plaintiff claims, could see no way to use a pintle hinge on such structures and have fully concealed hinge means.

Smith used a *ball-and-socket* type hinge with recessed openings in the body wall exposing the hinge arms. The structure never went into commercial use and was impractical for use on production cars. Plaintiff further points out that the ball-and-socket arrangement was actuated through a slot formed in the body wall and was exposed to the elements, exterior of the body wall. Smith's door, suspended by two too slender rods, would be bound to sag.

In the Howe v. Atwood decision (47 F.Supp. 979 (E.D.Mich.1942)), Judge Frank A. Picard distinguished the Smith patent from the Howe patent, noting, at 987:

"Thus we find the Smith patent distinguishing its 'ball and socket' feature on an inclined axis as accomplishing a result not obtainable by 'pintles' and insisting that pintles could *not* be used on the new doors without at least one or more of the hinges being *exposed* and adding that alignment was difficult. In practice, however, defendants found that their own Smith hinge was not feasible because the Smith ball and socket arrangement would not support a heavy car door and discontinued its manufacture.

"We do not question that the Smith patent was a pioneer in the inclined axis hinge type but there is more to the Howe hinge than an inclined axis. The pintels themselves are inclined. Even in the drawing accompanying the second hinge in which there are two pintles, both the top and bottom pintles are inclined in complete alignment. The claims are all specifically based on an inclined pintle built into the hinge and Claims 3 and 4 are additionally based on a gooseneck-hinge member of substantial curvature varying the extent of curvature from top to bottom to compensate for the inclination of the pintle." (Italics added.)

The court also said, at 988:

" * * * [T]his court holds that the examiner and the government intended to give plaintiff a patent covering a hinge having a goose-neck type hinge member with an inclined axis and an inclined pintle."

It further said, at 989:

"It is our holding that where there were hinges with the pintles inclined and aligned on an inclined axis fitted upon a door or in a depression of the door pillar to obtain results of the

Howe patent made and sold by defendant, plaintiff may recover. This we hold whether in a duplex unitary type or in a single type hinge."

The court concluded that it was not passing upon validity of the Howe patent, but upon infringement.

Mr. Hedeen testified that Smith had a tumble-in type body with inward and forward inclination, and a ball-and-socket hinge inclosed in the body of the door but a portion exposed on the outer surface—a cover plate. Further, there is a compensating angle of inclination of the hinge axis. And, Smith notes that the length of the hinge arms is different. Hedeen stated the only thing Howe adds to Smith is the gooseneck hinge.

On cross-examination, Mr. Hedeen stated the Smith vehicle never went into production and that the hinge, while workable, would not be practical for high production cars because too expensive.

Defendant argues that plaintiff cites only the insignificant features of Smith; that, in fact, Smith discloses substantially concealed hinges and a door having a tumble-in curvature more "severe" than Howe's and Smith solved this problem by inclining the axis forwardly. Smith "anticipates Howe in all respects except as to the specific type of the hinge," and it would have been "obvious to a man skilled in the art to take the Richard gooseneck hinges or the 1917 Chevrolet gooseneck hinges or the 1924–1925 Oakland gooseneck hinges and apply the Smith teachings thereto to achieve the same result as Howe does with a gooseneck hinge."

### Contentions of the Parties

Plaintiff stresses that the '490 patent is *not* limited to a unitary hinge and is not limited to a forward inclination of the hinge means to compensate for an inward inclination of the structure; nor as claiming hinge means, portions of which are exposed. On the contrary, the claims all call for a *concealed* hinge. Concealment is one of the most important objects of the invention. Therefore prior art hinges which are not fully concealed

do not anticipate. Infringement arises from the installation of the hinge in an automobile because the Howe patent does not contemplate simply a hinge, but a hinge for use in an automobile. But even if the patent were limited to a unitary structure, defendant's two-part structure would still infringe (Sutherland Paper Co. v. Auburn Carton Corp., 118 F.2d 862, 864 (7th Cir. 1941)). Nor, plaintiff states, can his claims be construed to be limited to a gooseneck-type hinge—a butt-type hinge would also be within the claims. Claims 1 and 2 are not limited to gooseneck hinges whereas Claims 3 and 4 are so limited.

Plaintiff cites the phrasing of the claims and specifications indicative of complete concealment of the hinge.

It is emphasized by plaintiff that although gooseneck hinges for use on automobiles were old as shown by Richard, Feldwabel, Mouche, Soss, Carr, 1917 Chevrolet, 1924–5 Oakland, and 1939 B.O. P., *concealed* gooseneck hinges on *inclined* car door walls were not suggested in the prior art and were considered by the prior art to be unusable. Prior to 1920, the cars were roadsters or touring cars, some with no doors at all, and the doors had no hinging problems. They had no glass and were light weight.

All steel bodies came in in the early 1930's, and the "tumble-in" bodies were adopted. The doors were larger and heavier and hung at an angle, and being inclined would tend to slam from the force of gravity. The growing width of the doors made the "lift" when they were inclined unsightly and undesirable, so efforts were made to cause such inclined doors to swing more horizontally and so with less effort.

Mr. Howe testified that a forward inclination causes a drop of the door on opening which in part compensates for the lift resulting from inward inclination with the result the door will swing more horizontally than otherwise. Plaintiff maintains it is immaterial at what portion of the swing the rise and drop occur so long as the final result is one of sub-

stantially horizontal movement with no excessive lift.

Plaintiff claims an invention date earlier than June 7, 1937, when he disclosed his invention to the Assistant Director of New Devices Committee of defendant, evidenced by a drawing dated April 26, 1937, and identified by two signatures dated April 29, 1937. Another drawing of Howe, which he took to have made into a model by Paul Henze of Detroit on September 1, 1937, disclosed the subject matter of the instant patent. It was returned by Henze with a note on the back dated September 2, 1937. Mr. Howe made a layout drawing in 1938 for his licensee, Metal Specialty Company, for submission to M. Hughes, Chief Body Engineer of Studebaker, writing Mr. Hughes a letter dated May 11, 1938. The drawings Howe made for the licensee are also dated earlier in 1938 than defendant's B.O.P. public announcement. So Howe insists he had disclosed his invention to the public long before the 1939 B.O.P. was shown and has proved it by satisfying evidence (Marconi Wireless Telegraph Co. of America v. United States, 320 U.S. 1, 34, 63 S.Ct. 1393, 87 L.Ed. 1731 (1943).

As to DX 49–37 (the letter charging General Motors with infringement), plaintiff maintains defendants seeks to twist it into an assertion by plaintiff that the patent in suit covers *partially* concealed hinges. Plaintiff explains that the letter specifies *"patents"* without giving their numbers and, in fact, it concerned *two* patents of plaintiff, the other one of which covered partially concealed hinges.

Plaintiff maintains that the scope of the Howe patent is to be determined by the patent grant and its file wrapper, and not by matters appearing in the Howe v. Atwood litigation. An inventor himself, Howe points out, may not be cognizant of the breadth or principles of his own invention (Eames v. Andrews, 122 U.S. 40, 56, 7 S.Ct. 1073, 30 L.Ed. 1064 (1887)). An inventor cannot change the patent's scope by what he may say. He believes that his letter (DX 49–

37) is being used to misinterpret the scope of his patent as to partially concealed hinges, when in fact the letter was meant to cover his earlier patent, No. 2,163,323, as well as the patent in suit.

■ Also, Howe points out that "obviousness" of an invention must be tested as of the time of its conception and not from hindsight (Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 435, 31 S.Ct. 444, 55 L.Ed. 527 (1911)). He argues that defendant relies on prior art for anticipation but did not itself choose to follow it until it had knowledge of plaintiff's work.

Plaintiff argues strenuously that the Atwood litigation does not constitute an estoppel in that General Motors was not a party to that litigation or in privity. All it did was furnish Atwood with material for defense. Further, the issue in the Atwood case was not infringement of the patent but *construction of a license agreement*.

Defendant states its interest in the Atwood litigation is *Howe's* then interpretation of his own patent—that it covered a single hinge that was concealed but was used at the top of the door in conjunction with a lower exposed conventional hinge (such as the 1939 B.O.P.). He is now saying the patent does not cover a single concealed hinge but only two concealed hinges used in concert.

Howe testified he had four pending applications, no patents, at the time of the Atwood license.

Infringement is present, plaintiff contends, because in the accused passenger car structures, the hinges are mounted as to be fully concealed within the door and the door pillar and built within the contours thereof both inside and outside of the car body. None is merely hidden from view with a shield such as the model of the 35 XP 510 drawing. In almost all of the structures the reach at the top of the hinge structure is longer than that at the lower portion thereof. The longer hinge reach at the top causes the door edge to swing further away from the door opening at that portion than at the con-

nection with the shorter hinge portion, and is a factor helping to compensate for and solve the problem caused by inclined walls of tumble-in bodies of automobiles. All of the alleged infringing devices have their axis inclinations tilted inwardly at the top, none is either vertical nor tipped outwardly at the top. Most of them have their axis inclined forwardly as well. A couple of the devices have very slight rearward inclination. Plaintiff further insists that in all the accused structures "there was a swing 'through a substantially horizontal arc' and without excessive lift." None of the accused hinges is mounted at the rear. Not all of the accused structures are charged to infringe all the claims.

It is defendant's contention that the Howe patent is invalid because completely and directly anticipated by any one of the prior art Mouche and Carr patents, the Feldwabel publication, and the 1939 B.O.P. upper front door hinge; that what Howe did was obvious. Further, it contends that the patent claims define an aggregation of old elements all performing the same function in combination which they performed previously, with no new or surprising consequences (Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950)).

■ Inasmuch as this prior art and the Richard patent and defendant's 1917–1918 Chevrolet hinges, and the 1924–1925 Oakland hinges were not cited by the Patent Office Examiner, the presumption of validity arising from the grant of the patent "is greatly weakened" (Kennatrack Corporation v. Stanley Works, 314 F.2d 164 (7th Cir. 1963); Milton Manufacturing Co. v. Potter-Weil Corporation, 327 F.2d 437 (7th Cir. 1964)).

Defendant further insists there was no "hinging problem" which had to be solved, dealing with steel bodies, full doors, and closed doors, which plaintiff discusses in his brief, but which the patent itself failed to mention. In fact, the defendant asserts it had long used spaced pairs of concealed gooseneck hinges on inclined axes on open cars where the hinging is all below the belt line. It had, prior to Howe, used completely concealed spaced gooseneck hinges on an inwardly inclined axis to support the rear door of the 1939 B.O.P. closed sedan having glass in the door and where the hinging was still all below the belt line. The rear door of the 1939 B.O.P. closed sedan was thereby caused to swing in a substantially horizontal arc. If there were invention, defendant and its employees were the prior inventors as shown by 35 XP 510 and 1939 B.O.P.

■ Defendant states that in order to avoid the anticipating prior art—the Mouche patent, the Feldwabel publication and the 1939 B.O.P. and 35 XP 510 hinging—Howe attempts to read limitations into his broad claims by excluding from the patent open touring cars or roadsters having light weight narrow doors and including only closed sedans which have larger, heavier doors with glass. However, nowhere (except in the drawing) does Howe state therein that his patent is so limited. This reading of nonexistent limitations into the claims is in effect applying a double standard in an effort to save the patent over the prior art and at the same time to read claims on accused hinges, which is not allowed (Chicago Steel Foundry Co. v. Burnside Steel Foundry Co., 132 F.2d 812 (7th Cir. 1943); Enterprise Railway Equipment Co. v. Pullman Standard Car Mfg. Co., 95 F.2d 17, 21 (7th Cir. 1938)). Nor is plaintiff interpreting his patent by the same standard in determining validity as for determining infringement (White v. Dunbar, 119 U.S. 47, 51–52, 7 S.Ct. 72, 30 L.Ed. 303 (1886)).

■ Defendant also challenges plaintiff's argument that his patent is limited to a completely concealed hinge in order to avoid anticipation by the 1939 B.O.P. defense and a limitation may not be read into a broad claim to save it from anticipation (McCarty v. Lehigh Valley Railroad Co., 160 U.S. 110, 116, 16 S.Ct. 240, 40 L.Ed. 358 (1895)).

Defendant insists the Howe patent nowhere claims that the variation in hinge lengths is another means for causing the door to swing in a substantially horizontal arc. Defendant maintains that it has been conclusively demonstrated that varying the length of the hinge arm has no effect on door swing and it is only the hinge axis and the angles of the hinge axis that control the swing of the door.

Defendant contends that the Howe patent is invalid for indefiniteness in many critical respects both in the specification and claims, and does not state the limits of the invention as required by 35 U.S.C. § 112. There must be guide lines so the public will be advised as to what would constitute infringement (General Electric Co. v. Wabash Applicance Corp., 304 U.S. 364, 368, 58 S.Ct. 899, 82 L.Ed. 1402 (1938); United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 236–237, 63 S.Ct. 165, 87 L.Ed. 232 (1942)). Among other deficiencies, the degree of forward inclination to compensate for the inward inclination so as to cause the door to swing in a substantially horizontal arc is not given. Howe testified there might be a difference of engineering opinion as to what is excessive lift and excessive tumble-in. This itself is a basis for invalidity of claims (A R Inc. v. Electro-Voice, Incorporated, 311 F.2d 508 (7th Cir. 1962)).

Defendant claims its 35 XP 510 in 1935 antedates plaintiff's earliest invention date, and the burden of proof in carrying back dates of invention is equally as heavy on a plaintiff patentee as it is on a defendant, and it is also required in this circuit and elsewhere that the inventor's testimony be corroborated, which Howe failed to do (Pleatmaster, Inc. v. J. L. Golding Mfg. Co., 240 F.2d 894, 898 (7th Cir. 1957)).

Defendant claims that not one of its doors is hinged at the rear edge and so it cannot be deemed to infringe Claim 3, which described an axis inclined inwardly and rearwardly.

Mr. Hedeen methodically covered the accused infringing structures and found support for them in the prior art, and similarly found anticipation of the Howe patent therefrom.

Infringement where the structure is readily understandable is a question for the court to determine and expert testimony on the issue is not needed, and is in fact superfluous, defendant points out (Singer Mfg. Co. v. Cramer, 192 U.S. 265, 275, 24 S.Ct. 291, 48 L.Ed. 437 (1904); Thabet Mfg. Co. v. Kool Vent Metal Awning Corp., 226 F.2d 207 (6th Cir. 1955); Kohn v. Eimer, 265 F. 900 (1920)). Further, the mere reading by Howe of his patent claims on the accused hinges does not establish infringement, because to infringe there must be real identity of means, operation and result (Flowers v. Austin-Western Co., 149 F.2d 955 (7th Cir. 1945); Elgen Mfg. Corporation v. Ventfabrics, Inc., 314 F.2d 440 (7th Cir. 1963); North Star Ice Equipment Co. v. Akshun Manufacturing Co., 301 F.2d 882 (7th Cir. 1962); Weil Pump Co. v. Chicago Pump Co., 74 F.2d 13 (7th Cir. 1934)). The claims cannot be given a broader construction than the actual teachings of the patent as shown by the drawings and the specifications (Flowers v. Austin-Western Co., supra; Weil Pump Co. v. Chicago Pump Co., supra). And Howe's advance, if any, stated in his claims being in a crowded art, must be strictly construed (Computing Scale Co. of America v. Automatic Scale Co., 204 U.S. 609, 27 S.Ct. 307, 51 L.Ed. 645 (1907); Simmons Company v. A. Brandwein & Co., 250 F.2d 440 (7th Cir. 1957); Kennatrack Corporation v. Stanley Works, 314 F.2d 164 (7th Cir. 1963)). Defendant insists the axes of its hinges are determined by the body of the car, i. e., the styling of the car determines the inclination. It states, "after a body is styled, the hinge axis and length of hinge arms just happen."

Defendant further emphasizes that none of the accused structures is a *single* hinge as called for by the Howe claims. Also, some accused structures were inclined only inwardly and did not swing in a substantially horizontal arc causing the door rise to be excessive. In fact,

a divergence in length of hinge arms does not affect door rise—only the inclination of hinge axis can do that. Since, as Judge La Buy found, all the claims call for a dual inclination of the hinge axis, the accused structures which incline only inwardly cannot be deemed to infringe. Since plaintiff formulated the finding, he is bound by that interpretation of his patent. Further, those structures of defendant which have an inward and *rearward* inclination, cannot be deemed to infringe because there are additive angles which increase the door's tendency to rise on being opened, rather than making it swing in a substantially horizontal arc.

 As to other of its hinges, defendant denies infringement because the inclination inwardly is so great as to make a door rise of some six and a half inches. Such a high door rise could not be said to constitute a substantially horizontal arc. Those hinges having but a very slight door rise do not infringe because the inclination was not directed to an excessive door rise but was dictated by body styling. Some of its hinges have an axis parallel with the door edge so do not constitute infringement, because the omission of a feature or structural relationship in a claim will avoid infringement (Kennatrack Corporation v. Stanley Works, 314 F.2d 164 (7th Cir. 1963)).

Defendant says that Feldwabel found Howe's solution—but in the reverse—because the body in the Feldwabel vehicle inclined outwardly.

Defendant rejects any plausible basis of validity of Howe's patent over the prior art based on the prior art having no glass and no frame above the belt because all the hinging in the prior art was below the belt line.

As to prior litigation, defendant points out the Carr patent, the Feldwabel publication and the B.O.P. defense were not before Judge La Buy in the trial before him. Defendant also challenges plaintiff's reliability citing the inconsistency of his position in the present case from that in the Howe v. Atwood matter.

## Conclusion

The determination of the issue of validity is not as clear-cut as might be desired. The court, however, concludes that in view of the state of the prior art the advance covered by the patent should have been "obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains" (Graham et al. v. John Deere Company of Kansas City et al., 86 S.Ct. 684 decided February 21, 1966, United States Supreme Court). While the Supreme Court states that "the general level of innovation necessary to sustain patentability remains the same," still it is further observed, "The grant of an exclusive right to an invention * * was not to be freely given." It said:

" * * * Jefferson did not believe in granting patents for small details, obvious improvements, or frivolous devices. His writings evidence his insistence upon a *high level of patentability*."

\* \* \* \* \*

" * * * Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. \* \* \*"

\* \* \* \* \* \*

" * * * [T]he inquiry which the * * * courts must make as to patentability must be beamed with greater intensity on the requirements of § 103, it bears repeating that we find no change in *the general strictness* with which the overall test is to be applied. We have been urged to

find in § 103 a relaxed standard * *. The standard has remained invariable in this Court. * * * He who seeks to build a better mousetrap today has a long path to tread before reaching the Patent Office."

* * * * * *

"The District Court and the Court of Appeals found that the prior art 'as a whole in one form or another contains all of the mechanical elements of the * * * Patent.'" (Italics added.)

In commenting on the step taken in the matter there being considered, the court said:

"* * * Certainly a person having ordinary skill in the prior art, given the fact that the flex in the shank could be utilized more effectively if allowed to run the entire length of the shank, would immediately see that the thing to do was what Graham did, i. e., *invert* the shank and the hinge plate."

* * * * * *

"* * * Furthermore, *even though the position of the shank and hinge plate appears reversed in Glencoe, the mechanical operation is identical.* The shank there pivots about the underside of the stirrup, which in Glencoe is *above* the shank. In other words, the stirrup in Glencoe serves exactly the same function as the heel of the hinge plate in '798. The mere shifting of the wear point to the heel of the '798 hinge plate from the stirrup of Glencoe * * presents no operative mechanical distinctions, much less nonobvious differences." (Italics added.)

The court has considered plaintiff's argument that his invention can not be deemed obvious when defendant had hundreds of skilled men working many months with all the prior art at their disposal, and yet they did not come up with his solution of the inclination of the hinge means forwardly and inwardly, using a gooseneck hinge with the upper arm longer than the lower one to accom-

modate the resultant wider swing on top than on the bottom due to the inclination of the axis. As plaintiff points out, defendant used a partially, not a completely concealed hinge, and did not utilize prior art knowledge until plaintiff made his alleged disclosure to it.

It is apparent, however, under the *Graham* decision, supra, that a mere reversal of the inclination of the axis of the prior art on tumble-out auto bodies would be deemed an obvious change, not rising to the dignity of invention. Similarly, the utilization of the old gooseneck type hinge with a variation in arm length adapted to the change in inclination of the axis would also be a manifestation of mechanical skill.

It should have been clear to a skilled worker in the field that if the axis of a hinge on an outwardly inclined car body was outwardly inclined that when the auto body line was changed to curve inwardly, the axis of the hinge would undergo a comparable change. And it would follow that the arms of the gooseneck hinge would also have to be reversed with the longer one on top and the shorter one on the bottom. The Mouche patent and the Feldwabel article showed practically the inverse of plaintiff's conception, on a tumble-out body. Carr had a gooseneck hinge with arms of differing lengths.

The court concludes that the Howe '490 patent is invalid because not evidencing an advance sufficiently great over the prior art to be the basis of a valid patent. It therefore need not pass upon the issue of infringement.

Counsel for defendant is directed to prepare and submit to the court and opposing counsel, within ten days, findings of fact and conclusions of law, which shall simply state the adoption by the court of the facts disclosed in the stipulation of facts, the findings of this decision, and the conclusion of law of invalidity of the patent.