**Earl E. HOWE, Plaintiff-Appellant-Appellee,**

v.

**GENERAL MOTORS CORPORATION, Defendant-Appellee-Appellant.**

**Nos. 15841, 15842.**

United States Court of Appeals Seventh Circuit.

July 15, 1968.

Rehearing Denied in Part Oct. 16, 1968.

George N. Hibben, Chicago, Ill., Arthur Raisch, Eugene W. Christen, Detroit, Mich., Hibben, Noyes & Bicknell, Chicago, Ill., Barnes Kisselle, Raisch & Choate, Detroit, Mich., for General Motors Corp.

Warren C. Horton, Lawrence S. Galka, Chicago, Ill., for Howe.

Before CASTLE, Chief Judge, and KILEY and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

Earl E. Howe brought this action in 1954 against General Motors Corporation to recover treble damages for infringement of a patent.[1] At issue are alleged infringements from 1948, six years before commencement of the action, to 1957, when the patent expired.

Defendant alleged laches and estoppel, among other defenses. Plaintiff had demanded a jury trial, and in 1958 this equitable defense was tried before Judge La Buy without a jury. Judge La Buy decided that defendant failed to prove laches or estoppel.[2] The other issues were tried in 1960, but the jury could not agree.

The case was tried again in March and April, 1961. The jury found for defendant, but Judge Perry granted a new trial. This court denied defendant's applications for certiorari or mandamus.[3]

The demand for jury trial was withdrawn, and the case was tried before Judge Robson, without a jury. Judge Robson filed an extensive opinion[4] as

---

1. No. 2,201,490, Inclined Hinge, issued May 21, 1940, to Earl E. Howe, application dated January 9, 1939.

2. Howe v. General Motors Corporation (N.D.Ill.1958), 167 F.Supp. 330.

3. General Motors Corporation v. Perry (7th Cir. 1962), 303 F.2d 544.

4. Howe v. General Motors Corporation (N.D.Ill.1966), 252 F.Supp. 924.

well as findings of fact and conclusions of law, holding the patent invalid for obviousness under 35 U.S.C. sec. 103.

Plaintiff has appealed from the judgment accordingly entered. Defendant has appealed from the 1958 order dismissing its defense of laches and estoppel, the 1961 order granting a new trial, and the 1961 order denying its motions for a directed verdict. These latter challenges need not be considered if the judgment be affirmed on plaintiff's appeal.

The trial occurred before announcement of Graham v. John Deere Co.[5] and the decision was prepared shortly thereafter. As a result the analytical steps prescribed in *Graham* for resolution of the obviousness issue were not as meticulously set forth as is desirable.[6] We are satisfied, however, that the court did apply the correct tests and reached the proper result.[7]

1. *The problem addressed by plaintiff.* Plaintiff prepared his application in the latter 1930's. All-steel bodies had earlier begun to be prevalent. Designers found it desirable to shape them with curved side walls, usually inclined toward the interior as they extended upward (the so-called "tumble-in" body shape). The doors were heavy and must be hinged so as to swing free of the adjacent curved edges of the body. Sturdy hinges were necessary. It is undesirable to have a door so hinged that the force of gravity will make it difficult to open or will cause it to shut with dangerous force when open. On the other hand a reasonable tendency to close, called a bias toward closing, is desirable. It is undesirable to have hinges protrude beyond the outer wall. These are some, but not all of the factors which are weighed in selecting a design.

Elements of the hinging problem are suggested in portions of Mr. Howe's application:

"In an automobile body having upwardly converging side walls the door frame is, of course, inclined with the result that assembly of a hinge therein ordinarily disposes the hinge pin at an angle to the vertical. The angularity of the hinge pin is such that any point on the door swings through an arc which is inclined to the horizontal and inasmuch as the angle is such that gravity will cause the door to swing to its closed position, the angularity of the hinge pin is termed the tumble-in angle. The excessive tumble-in angle present in conjunction with the inclined walls of the later automobile body designs is undesirable in the respect that the door closes too rapidly and unless held may strike a person entering the automobile or who has completed his entrance except as to his foot and ankle. From the standpoint of appearance it is undesirable that the arc of swinging movement of the door should depart too great a degree from a horizontal plane. Accordingly, it is an important object of this invention to provide a concealed hinge which permits the door to swing substantially parallel to the ground, or in a substantially horizontal arc even in the presence of an extreme tumble-in angle.

"Another object of the invention is to provide a concealed hinge for supporting an automobile door in such manner that gravity biases closing movement thereof. This feature is particularly desirable in conjunction with the left hand doors of an automobile in order that such doors will not remain open while the automobile is parked on a highway, as such doors in an open position constitute a hazard to traffic on the highway.

5. (1966), 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545.

6. See Cloud v. Standard Packaging Corp. (7th Cir. 1967), 376 F.2d 384, 391, and Gass v. Montgomery Ward & Co. (7th Cir. 1967), 387 F.2d 129, 130.

7. Plaintiff challenges the court's use of "should have been obvious" in the reported opinion. In its findings, however, the court said "would have been obvious", as does the statute.

"Another object is to provide a concealed hinge for supporting a curved door for swinging movement about an axis which is disposed externally of the automobile body at both the top and the bottom of the door frame, and which passes through the body between the top and bottom of the frame. The purpose of the hinge in this respect is to avoid the necessity of comparatively long, outwardly projecting hinge elements, such as are ordinarily used in conjunction with curved doors. This is made possible by use of a single hinge, disposed within the plane of the body wall, and whose axis of pivotal movement if prolonged passes the top and bottom of the door frame externally thereof."

2. *Plaintiff's solution.* The patent contains four claims. Claim 2 reads as follows:

"A concealed hinge for supporting a door from a door pillar in an automobile body having an inclined wall, said hinge comprising a plate member for attachment to the pillar, a pintle carried by said plate member disposed at an angle to the vertical as viewed in a transverse section through said wall, said plate member also supporting said pintle with its axis at an angle to the vertical as viewed in side elevation, an arm member connected to said pintle and adapted for attachment to a door, the axis of said pintle being inclined with respect to the adjacent edge of the door to the extent that said door swings through a substantially horizontal arc during opening and closing movements thereof, said arc departing from the horizontal only in an amount enabling gravity to bias movement of the door toward a closed position."

Claim 1 is identical to Claim 2 except that Claim 1 does not contain the last 22 words (beginning "said arc").

Claim 3 is somewhat similar in outline to Claim 2. It refers, however, to "a curved door on a curved automobile door pillar", to the hinge axis as inclining "inwardly of the automobile body and also rearwardly thereof with respect to the adjacent door edge", and to "a gooseneck hinge means of generally U shape—the U shape of said gooseneck member varying in length of its branch and in divergence from top to bottom thereof by an amount sufficient to substantially compensate the inclination" of the axis.

Claim 4 is somewhat similar to Claim 3, but refers to the axis being "at an inclination to the vertical as required by the curvature of the automobile body. * * *"

The significant elements or devices described in one or more claims are concealment of the hinge, sloping the axis of the hinge pintle inwardly as it extends upwardly and either forwardly or rearwardly, and use of a gooseneck U shaped hinge arm so shaped as to allow for a greater distance between the axis and the point on the door to which that part or branch of the arm is connected than between the axis and the point on the door to which another part or branch of the arm is connected. Each claim specifies that the door "swings through a substantially horizontal arc."

Certain principles with respect to the inclination of the hinge axis clearly appear from the record:

If the hinge axis is vertical, a given point in the door will describe a horizontal arc when the door swings. If the hinge axis is inclined inwardly as it extends upward, but is inclined neither forwardly nor rearwardly, a given point in the door will rise as the door swings open toward 90°. If the axis is inclined inwardly and away from the door (forwardly if the door is hinged at its forward edge), a given point in the door will rise as the door swings partly open and then will fall. This is the effect described in every claim of the patent as swinging through a substantially horizontal arc. If the angle by which the axis is inclined inwardly is equal to the angle by which it is inclined away from the door, the change from rising to falling will occur when the door has swung open to 45°.

If the hinge axis is inclined inwardly and toward the door (rearwardly if the door is hinged at its forward edge), a given point in the door will rise at a faster rate as the door swings open toward 90° than if the only inclination were inwardly. This effect was referred to at trial as additive, rather than compensating.

If the hinge axis is inclined outwardly as it extends upward, but not inclined either forwardly or rearwardly, a given point in the door will fall as the door swings open toward 90°. There will be a compensating effect if the axis is also inclined toward the door and an additive effect if away from the door.

As will be seen, concealed hinges and gooseneck hinge arms were known and used before this patent. The issue mainly debated here is whether the idea of inclining the hinge axis so as to achieve a compensating effect is old or obvious.[8]

Normally it is desirable to space the hinges relatively far apart along the axis. In the drawings included in the patent, Mr. Howe provided for a single unitary hinge, with a pintle apparently longer than the ordinary one, or with two pintles spaced slightly apart along the axis. Assuming this hinge could be made sturdy enough, the fact that it did not take up much space along the axis would work an advantage in fitting the hinging apparatus into one segment of a curved door.

This idea, however, is not expressed in any claim.

3. *The prior art.* The patent contains no citations of prior art patents. Considerable proof in this area was produced on trial and is reflected in the opinion of the district court.[9]

Concealed, gooseneck, U shaped hinges were disclosed in the 1917 Chevrolet; in the Richard patent;[10] in the Feldwabel publication;[11] in the Soss patent;[12] in the Mouche patent;[13] and in the 1924 Oakland touring car.

The Feldwabel publication and the Mouche patent also disclosed variations in the size or curvature of the gooseneck hinge member, required in order to accommodate the curved vertical profile of the door to the hinge axis.

Diagonal inclinations of the hinge axis, producing the compensating effect, was disclosed by the Feldwabel publication, the Mouche patent, and the Smith patent,[14] and was suggested as a possibility by the Carr patent.[15]

Table 25 of the Feldwabel shows an open car. The hinge axis of the door is inclined outwardly as it extends upward (a tumble-out type). The axis is also inclined rearwardly (toward the door), thus producing the compensating effect.

The Mouche patent disclosed a tumble-out body, with hinge axis inclined outwardly and rearwardly (toward the

8. Literally, the claims apply whether the hinge axis be inclined inwardly or outwardly, although Mr. Howe stated the problem in terms of tumble-in bodies. Inclinations which produce an additive effect are outside the claims because each claim includes the element of swinging through a substantially horizontal axis.

9. Howe v. General Motors Corporation (N.D.Ill.1966), 252 F.Supp. 924, 927. We deem it unnecessary to repeat the details here.

10. No. 1,325,109, Hinge Construction, issued December 16, 1919 to F. Richard on application filed March 10, 1917.

11. Der Wagenbauer Lehr-und Hilfsbuch fur Wagenbau und Automobil-Karosserie, von J. Feldwabel, published in Germany

and Austria in 1920. It was stipulated this was received in the United States early enough to be prior art.

12. No. 1,363,370, Hinge, issued December 28, 1920 to C. J. Soss on application filed June 17, 1919.

13. French patent No. 537011, Hinge retaining the vertical position during the opening of a door having a curvilinear profile vertically, issued February 23, 1922 to Elie Mouche on application filed June 4, 1921.

14. No. 2,050,469, Vehicle Door Mounting, issued August 11, 1936 to F. M. Smith on application filed September 5, 1935.

15. No. 2,114,830, Vehicle, issued April 19, 1938, to R. L. Carr on application filed January 15, 1935.

door), and producing the compensating effect.

The Carr patent depicted a door hinged at its rear edge. The hinge axis had a substantial inclination rearwardly as it extended upward. Carr preferred no lateral inclination, but indicated the axis might be inclined either inward or outward.

Carr, Feldwabel, and Mouche do not expressly describe the effect of inclination of the hinge axis upon the swing of the door, except that some language of Mouche indicates that his arrangement results in the door remaining vertical as it opens.

The Smith patent, however, though using a type of hinge different from Howe, expressly refers to the effect of diagonal inward inclination of the hinge axis. Smith says, in part:

"By varying the relative lengths of the hinge plates and connector members, various characteristic door movements may be obtained. For instance, the plates and connector members may be so constructed and adjusted for bodies having walls and doors of any particular contour or shape that the axis about which the door hinges may be perpendicular or inclined forwardly, rearwardly or laterally relative thereto, whereby the door will tend to remain in any partly opened or wholly opened position or if inclined will tend to move to either opened or closed position, depending upon the direction of inclination of such axis.

"In order that the top and bottom edges of the door shall remain more nearly horizontal or parallel with the ground level when the door is opened, the hinge joint of the upper hinge is offset longitudinally of the vehicle to compensate for this inward inclination of the hinge axis. The hinge axis of the door is, therefore, diagonally inclined, that is, it is inclined both transversely and longitudinally of the vehicle. As a result of this diagonal inclination of the hinge axis, the door,

when opened, will, in theory, tend to close until it is turned to the neutral position in the vertical plane of the hinged axis and beyond that it tends to swing to open position."

Smith's Claim 14 reads:

"In combination, a vehicle body ovate in cross section, a door for said body, upper and lower hinges for hingedly connecting said door to said body, the axis of the joints of said hinges extending diagonally inward whereby said door will tend to close when released at one side of the neutral position of said door, and will tend to open when at the opposite side of the neutral position."

4. *Differences between the prior art and the claims.* With respect to the type of hinge, its arrangement so as to be concealed, and its configuration so as to accommodate doors with a curved vertical profile, or otherwise having an edge not parallel to the hinge axis, the Howe patent does not differ from corresponding elements of the prior art. Howe was concerned with heavier doors, but resulting differences in size and strength of hinges would be immaterial for the present purpose. The district court found:

"The technique of hinging of doors to the bodies of touring cars, convertibles and closed cars or sedans is the same because the hinging of a car door and its hinge axis is dependent upon the contour of the door and body surface below the belt line. The size and weight of the doors and the use of glass above the belt line do not affect the hinge axis. Howe did not urge before the Patent Office that the technique of hinging doors on closed cars was different from that of hinging doors on open touring cars which he so heavily relied upon at the trial."

With respect to the inclination of the hinge axis and its effect on the swinging of the door, some of the prior art is found in tumble-out bodies, whereas Howe was concerned with a corresponding effect in

tumble-in bodies. The district court found:

"The problem of compensating for an inward inclination of the hinge axis in the transverse view in a tumble-in body to achieve a substantially horizontal door swing is the inverse of the problem of compensating for an outward inclination of the hinge axis in the transverse view in a tumble-out body and the solution of the problem is the same in each instance. Where there is an outward inclination of the hinge axis, the hinge axis is inclined rearwardly to compensate for it and achieve a substantially horizontal door swing. Where there is an inward inclination of the hinge axis, the hinge axis is then inclined forwardly to compensate for the inward inclination and this also causes the door to swing in a substantially horizontal arc."

The Smith patent disclosed a ball-in-socket hinge and not the pintle type described by Howe. The Smith hinge was not as fully concealed as Howe's. Both, however, were concerned with the tumble-in bodies prevalent in the latter 1930's. There is no material difference between their concepts of the inclination of the hinge axis and its effect on the swinging of the door.

There are combinations of concealed, gooseneck, U shaped hinges and diagonal inclination of the hinge axis, with compensating effect, in the tumble-out prior art. Defendant did not prove, as prior art, any similar combination in tumble-in bodies.[16]

5. *The level of ordinary skill in the pertinent art.* It appears that in the late 1930's the level of ordinary skill in the field of designing automobile bodies, including hinges, was that of engineers of substantial training, and specialized skill.

6. *Obviousness.* It is perhaps possible to say that the Howe patent claims were anticipated by the tumble-out prior art. But in any event, viewing the subject matter of the patent either as an inversion of the tumble-out prior art, to adapt it to tumble-in bodies, or as a combination of the well-known type of concealed hinge with the diagonal inclination of axis disclosed by Smith, we conclude that the subject matter would have been obvious to a person having ordinary skill in the art.

Mr. Howe, of course, emphasizes the fact that no automobile manufacturer, before the time of his patent, produced a closed car with a tumble-in body, with all hinges concealed. This type of fact is referred to by the Supreme Court in *Graham* as relevant, but secondary. It would be more persuasive here if the record had satisfactorily shown that the problem, addressed by Mr. Howe, of accommodating a desirable pattern of door swing to an inclined hinge axis, was really the stumbling block for a substantial period. It is not surprising that the record fails to illuminate this point. The pertinent period was more than 25 years before the most recent trial, and, indeed, more than 15 years before Mr. Howe began the action.

■ We acknowledge the statutory presumption of validity of a patent.[17] It has little, if any, force as against relevant prior art not shown to have been considered by the patent office.[18] In our view the presumption has been overcome.

■ *Other issues.* We affirm the district court decision on invalidity because of obviousness. It is unnecessary to review the issues raised by defendant's appeal. It is also unnecessary to consider

16. One possible, partial exception, not relied on, is the so-called 1939 B.O.P. hinging, which will later be referred to.

17. 35 U.S.C. sec. 282.

18. Skirow v. Roberts Colonial House, Inc. (7th Cir. 1966), 361 F.2d 388, 390; Novo Industrial Corporation v. Standard Screw Company (7th Cir. 1967), 374 F.2d 824, 877, Cf. Hunt v. Armour & Co. (7th Cir. 1950), 185 F.2d 722, 726; Kennatrack Corporation v. Stanley Works (7th Cir. 1963), 314 F.2d 164; Milton Manufacturing Co. v. Potter-Weil Corporation (7th Cir. 1964), 327 F.2d 437.

the hinging on defendant's 1939 Buicks, Oldsmobiles, and Pontiacs (1939 B.O.P.).

The 1939 B.O.P. upper front door hinge was concealed and the axis was inclined inwardly and forwardly (away from the door). The hinge was developed in or prior to 1938 when the 1939 models were first sold. They were sold before Howe filed his application. Plaintiff has claimed that his invention was earlier and that in developing this hinge defendant's representatives used information given them by plaintiff. Defendant has claimed that its development of this hinge began in 1935 and that if there is invention, defendant's 1939 B.O.P. hinge is invention prior to plaintiff's. The facts are in dispute and need not be resolved in view of our conclusion that the patent is invalid for obviousness.

The judgment appealed from is affirmed.