Edward A. **ROCKWELL** and **Electroflo Corporation**, Plaintiffs-Appellants and Cross-Appellees,

v.

**MIDLAND–ROSS CORPORATION**, Defendant-Appellee and Cross-Appellant.

Nos. 18143, 18144.

United States Court of Appeals, Seventh Circuit.

Feb. 19, 1971.

John P. Bundock, Jr., Phillip H. Mayer, Wolfe, Hubbard, Leydig, Voit & Osann, Robert O. Case, Walsh, Case & Coale, Associated, Chicago, Ill., for plaintiffs-appellants.

Robert W. Poore, Cleveland, Ohio, Robert O. Case, Sidney Neuman, Gregory B. Beggs, Pendleton, Neuman, Seibold & Williams, Chicago, Ill., Jones, Day, Cockley & Reavis, Cleveland, Ohio, for defendant-appellee.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and REYNOLDS, District Judge.*

HASTINGS, Senior Circuit Judge.

This action was brought to enjoin the alleged infringement of five patents on inventions relating to vehicle power brake units and to seek an accounting for damages resulting therefrom. Plaintiffs, Edward A. Rockwell and Electroflo Corporation,[1] charge that defendant Midland-Ross Corporation, by manufacturing and selling certain vacuum power booster units has infringed the patents in suit. The district court held all five patents invalid and not infringed. The court also refused to award defendant any fees for services of its attorneys in this action.

Plaintiffs have appealed the court's judgment with respect to the invalidity of claim 1 of patent No. 2,787,287;[2] claims 1, 8 and 9 of patent No. 2,708,-451;[3] and claim 10 of patent No. 2,794,-

---

* Judge Reynolds is sitting by designation from the Eastern District of Wisconsin.

1. Electroflo is Rockwell's assignee on the patent rights in suit.

2. Issued April 21, 1957 on application filed April 11, 1941.

3. Issued May 17, 1955 on application filed August 22, 1945.

320.[4] These claims are asserted against defendant's "Form B" booster unit. The court held each of the claims invalid because they failed to satisfy the requirements of nonobviousness, Title 35 U.S.C.A. § 103,[5] and novelty, Title 35 U.S.C.A. § 102(b).[6] Additionally, the court held claims 1 of '287 and 1, 8 and 9 of '451 failed to satisfy the requirement of definiteness, Title 35 U.S.C.A. § 112.[7] Finally, the court concluded that defendant's Form B did not infringe any of the claims in controversy. Defendant has cross-appealed from the refusal of its attorneys' fees.

The devices described in the patents on appeal and the accused structure multiply the force applied to a vehicle's brake pedal in order to greatly reduce the operator's physical effort. Such booster units utilize a piston-like power wall or diaphragm which divides a cylindrical enclosure into two pressure chambers. The wall is caused to move by establishing atmospheric pressure in the chamber on one side of the wall and a vacuum (obtained from the intake manifold of the vehicle's engine) in the chamber on the other side of the wall. When the power brake is not in operation, the pressure on both sides of the wall is equalized.[8]

The opening and closing of the air and vacuum passages by which movement of the power wall is achieved is under the control of a three-way valve mechanism. In vacuum suspended boosters, a closed vacuum valve and an open air valve result in application of the brakes. Conversely, an open vacuum valve and a closed air valve release the brakes. The third operating condition, simultaneously closed air and vacuum valves (the so-called "lapped position"), maintains the braking system at the level of actuation reached at the time the lapped position is attained.

The claims on appeal relate to the rubber closure members of the three-way valve mechanisms. The prior art patents relied on by the defendant, Searle No. 2,063,700 (Searle), Roy No. 2,144,854 (Roy) and King No. 2,009,696 (King), disclose three-way diaphragm type poppet valves for the control of air and vacuum passages. All three utilize disc-shaped closure members supported

4. Issued June 4, 1957 on application filed June 17, 1950.

5. Title 35 U.S.C.A. § 103 provides:
"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

6. Title 35 U.S.C.A. § 102 provides:
"A person shall be entitled to a patent unless—
"(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States * * *."

7. Title 35 U.S.C.A. § 112 provides, *inter alia*:

"The specification shall contain a written description of the invention * * * in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains * * * to make and use the same * * *.
"The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."

8. All of the patents on appeal and the accused structure are vacuum suspended units. A vacuum exists on both sides of the movable power wall when the unit is not in operation. The patents disclose "in-line" or "series" boosters. Such boosters are located in the hydraulic line between the wheels and the brake system's master cylinder. In effect, they divide the system into two parts; one to take up slack and operate the booster, and the second operated by the booster to apply the brakes. The accused device is a push-through pedal-operated booster located between the brake pedal and the master cylinder. It does not divide the hydraulic system.

by the outer flange and have air and vacuum closures seating on the same closure surface of the inner flange. In each of the prior art patents, the valves are housed separately from the controlled chambers and are not mounted on the movable power wall.

The trial court found that the rubber valve member in defendant's Form B is a diaphragm type poppet valve with an outer supporting flange, an intermediate radial diaphragm and an inner disc or closure member supported by the diaphragm. The valve is mounted on the movable power wall and the air and vacuum closures seat on the same closure surface.

## OBVIOUSNESS

Plaintiffs strongly assert that the trial court erred in basing its conclusions of obviousness on a clearly erroneous factual foundation, *i. e.*, that the only difference between the Rockwell "grommet" valve closure members and the prior art closure members were trivial and insignificant. We shall treat this issue on appeal as a factual question.

With respect to claim 1 of '287, the patent discloses a valve mechanism with a "movable circular element of elastic material formed in one piece provided with spool-like annular flanges." Relying on their expert's testimony and that of Rockwell, plaintiffs contend that the above language describes a tubular member longitudinally separating annular flanges coming out at the two ends. The district court in its findings of fact 16 and 17 determined that the terms of claim 1 were literally and substantively applicable to the prior art patents, Searle, Roy and King; that the "spool-like annular flanges" found by plaintiffs in the rubber valve element of the accused device were found with only trivial differences of shape in the prior art; and that the form of the intermediate portion between the flanges was a matter of designer's choice.

In the '451 patent, two two-way valves comprise the necessary three-way valve.

Claims 1 and 8 call for a rubber "grommet" valve member with a supporting flange and a valve flange and a helical spring for urging the flanges outwardly. Claim 9 describes a one-piece rubber valve member with a longitudinally yielding flexible annular member and spring-pressed outwardly-directed flanges, one acting as a valve flange and the other as a sealing flange. The court found that the grommets disclosed in the '451 claims did not contribute the advantages attributed to grommet valve construction. In finding 26 the court determined that the Roy, Searle and King patents showed the structure called for in claims 1, 8 and 9 of the '451 patent, if the claims are read as not requiring the presence of a metal spring to press the flanges apart.

In the '320 patent, claim 10 describes a "continuous, impervious, tubular member of resilient material * * * having a fixed and sealably secured * * * and a movable end normally in sealable abutment * * * to intercommunicate said second and third chambers through said tubular member and isolate said first chamber from the others." Plaintiffs argue that such language defines a three-way "grommet" valve with concentric valve seats on the same flange. Finding 35 determines that the prior art patents of Roy and Searle disclose the arrangement and function of claim 10, if the chambers referred to therein embrace the chambers of the Form B booster. Finding 36 determines that the arrangement of the valve elements of '320 involves no more than the skill of the art over the showing in Roy, Searle and King of two concentric valve seats on one movable extremity of a flexible annular rubber element, which has its other end fixed in sealing engagement with the housing, thus providing the same mode of operation of a three-way valve as is claimed in '320.

Plaintiffs contend that the "grommet" configuration results in the following *non-trivial differences* between the prior art valves and Rockwell's valves: (a) follow-up capability on the movable

power wall; (b) the ability to stabilize the valve by proportioning its two flanges; and (c) the presentment of a flat valve flange to its seat for alignment,[9] sealing and nearly zero lap. Thus, it is argued, the above findings are clearly erroneous.

█ Where the findings of the district court comparing the disclosures of the prior art to the patent claims and the accused structure are, in large part, based on expert testimony, we cannot consider the issues as though we were a *nisi prius* court. Armour Research Foundation v. C. K. Williams & Co., 7 Cir., 280 F.2d 499, 503 (1960). The findings in the instant case have their genesis in expert testimony and they shall not be disturbed on appeal unless clearly erroneous.[10] Fed.R.Civ.Pro., 52(a); Armour & Co. v. Wilson & Co., 7 Cir., 274 F.2d 143, 151, 156 (1960).

Defendant's experts, Brown and Schultz, testified that defendant's Form B valve element is not "spool-like" but has flanges supported by an annular portion which serves as a diaphragm.[11] In his application of the terms of claim 1 of '287 to the prior art references, defendant's expert Groh found flanges at the inner and outer radial extremities in each of the patents. He further testified that the claimed structure and function of '287 was fully satisfied by the prior disclosures, despite their lack of an intermediate tubular section of any substantial length. He concluded, therefore, that if claim 1 could be interpreted to read on defendant's Form B, it would also read on the prior art patents.

In testifying about the '451 patent, Groh said that claims 1, 8 and 9 were substantively applicable to the Roy prior art patent, including literal compliance with the requirement for a spring in claim 9.[12] Groh described the Searle and King patents as very similar to Roy, except for the lack of a hip in the diaphragm part of the disc, and said he did not consider Roy any better than Searle and King in applicability to the '451 patent. Further, he testified that the flanges in the prior art patents were also resiliently spaced apart by the rubber in the disc configuration of the prior art patents.[13]

Likewise, in his substantive application of the claim language in '320 to the prior art disclosures of Roy and Searle, Groh testified that the valve element of Roy was in essence a section of a tube, thus complying with the requirement in claim 10 of the "tubular resilient member." Groh further testified that Roy, Searle and King were generally the same in the literal application to the '320 patent.

Moreover, there was expert testimony for defendant that the prior art valves had follow-up action; did not leak; had nearly zero lap; provided a static seal at the outer flange of the rubber element; and that the rubber element seals itself by virtue of its own resiliency.

The chamber between the flanges of the '451 element was vented to allow the

9. The '320 patent does not present a flat valve flange to its seat for alignment. The drawings clearly show that the element has an irregular contour.

10. The primary conflict throughout this case is the difference between plaintiffs' experts' testimony and defendant's experts' testimony. The trial court, from its disposition of the case, preferred the defendant's version.

11. The district court so found in its finding of fact 9, not expressly challenged by plaintiffs.

12. The spring in the Roy patent does not press the flanges apart as required in claim 1 of '451. However, the accused valve member has no spring. Plaintiffs argue that the resilient "memory" of the rubber performs the same function. In a like manner, the two flanges of Roy are spaced apart by the natural resilience of the rubber forming the hip-like or bellows configuration.

13. King expressly refers to the resiliency of the rubber element permitting the operation of the valve without the need for a spring. Searle describes how the rubber element firmly seats itself by its own resiliency.

compression of the grommet and was not made stable by proportioning its two flanges so that pressure forces against one could be balanced against the other. Also, there was no testimony that the valve flange in '451 could be compressed by the movable valve element without distortion. Further, plaintiffs' expert, Jones, conceded that the '287 valve member was unbalanced and tended to come off its seat.

Having due regard for the opportunity of the district court to hear the expert testimony and to draw reasonable inferences therefrom, and considering the above testimony in light of the record taken as a whole, we conclude that the above challenged findings of fact are amply supported by substantial evidence. Since plaintiffs have failed to establish clear error in the trial court's determinations, such findings shall not be set aside.

Plaintiffs next contend that in finding invalidity for obviousness, the district court ignored the statutory presumption of validity, Title 35 U.S.C.A. § 282.[14] It is argued that this presumption is strengthened in the instant case for a variety of reasons, viz: the prior art patent to King was cited by the patent examiner in the consideration of the '287 patent; defendant's expert, Groh, acknowledged that all three prior art patents could be lumped together; and the Bendix Corporation took a license on the patents in suit.

■ We long have held that the presumption of validity does not exist as against evidence of prior art not before the patent office. Hobbs v. Wisconsin Power & Light Co., 7 Cir., 250 F.2d 100, 105 (1957); see also, Howe v. General Motors Corp., 7 Cir., 401 F.2d 73, 78 (1968) and cases cited in n. 18. Neither Searle, Roy nor King was cited by the patent office in consideration of the '451 or '320 patents. Of the three prior art patents here relied on, only King was cited in the '287 application.[15] Plaintiffs contend, however, that testimony of defendant's expert Groh demonstrates that the prior art relied on by defendant was the same as, or no better than that considered and rejected by the patent office, and that, therefore, plaintiffs are entitled to the strengthened presumption.[16] Such testimony of Groh came on cross-examination and was, at best, equivocal.[17] We do not regard it as sufficient to es-

---

14. Title 35 U.S.C.A. § 282 provides, inter alia:

"A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it."

15. A review of the file wrapper of the '287 application indicates the questionable merit in using such citation to strengthen the presumption of validity. Although the King patent was mentioned in letters of rejection in December, 1952 and December, 1953, it was not mentioned again. There were three more rejection letters coming in March and December, 1955 and June, 1956, after the claims were rewritten three times, the rejections coming primarily because of misdescription and vagueness. Claim 55 of the application which was finally accepted in the patent as claim 1 was contained in the third revision. The bald citation of the prior art patent under such circumstances does not necessarily indicate consideration by the patent examiner.

16. See, TSC Industries, Inc. v. International Harvester Co., 7 Cir., 406 F.2d 53, 57 (1968).

17. Plaintiffs rely on the following testimony:

"Q. With respect to the '451 patent, let me ask the same question: The only patent that my notes indicate you specifically referred to was the patent to Roy. Is that the best reference, in your estimation?

"A. Again, it is the same answer. I don't remember that I considered it any better than Searle or King.

"Q. Would your answer be the same with respect to the other patents? You just can't choose between the prior art cited there right now?

"A. The Helfrecht patent? Is that what you are referring to?

"Q. No, I mean the other patents in suit, the '320.

"A. I would say that my answer is generally the same for all of these."

tablish equivalency of the King patent with the other two and thereby strengthen the statutory presumption.

Plaintiffs attempted reliance on the issuance of licenses to Bendix Corporation is likewise of no avail. The record discloses that suit was brought against Bendix for alleged infringement in June, 1965. The action was settled in October, 1966 and, as part of the settlement, Bendix accepted a package license on all patents which Rockwell had or might acquire. All that this evidence may indicate is that a manufacturer, for business reasons, may prefer to pay a royalty rather than be involved in litigation. Hobbs v. Wisconsin Power & Light Co., *supra*, 250 F.2d at 105.

Under such circumstances, we agree with the district court that the presumption of validity of the patents in issue was sufficiently rebutted.

Plaintiffs urge that the findings are insufficient to establish obviousness within the standards announced in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). In Graham v. Deere, the Court clearly described the analytical steps to be taken by a trial court in its determination of invalidity pursuant to Title 35 U.S.C.A. § 103, *supra*:

> " * * * Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. * * * " 383 U.S. at 17, 86 S.Ct. at 694.

Plaintiffs argue that because the findings fail to expressly enunciate the scope and content of the prior art, the structural and operational differences between the prior art valves and the "grommet valves", and the level of ordinary skill in the applicable art, the conclusion of obviousness does not comply with the dictates of Graham v. Deere.

Plaintiffs are subverting the substance of the ultimate findings to their form. The court established the matters to be considered in a conclusion of obviousness, not the words the findings should use. We deem it sufficient if the findings demonstrate that the trial court considered the issues set forth in Graham v. Deere.

Finding 16 contrasted the terms and substance of claim 1 of the '287 patent to the specific prior art patents of Searle, Roy and King and also compared the defendant's rubber valve element with those described in the prior art. Finding 18 dealt with the obviousness of the structure disclosed and claimed in claim 1 to a person skilled in the art who follows the prior art. Finding 19 equated the defendant's Form B with the prior art valve elements of Searle, Roy and King and expressly determined there was no material or functional difference between claim 1 of '287 and the prior art valve units, unless the claim is construed to require the air and vacuum valve seats to abut different flanges.

Likewise, finding 35 compares the prior art Roy and Searle patents to the function and arrangement of the chambers in defendant's Form B and plaintiffs' claim 10; and finding 36 determines that the arrangement of the valve elements of the '320 patent involves no more than the skill of the art, and compares the prior art mode of operation to the '320 mode.

Finally, finding 69 describes the "concentric valve seats abutting a single movable flange or closure member" in defendant's Form B to be the same as shown in Roy, King and Searle.[18]

■ Clearly, the trial court ascertained the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the art in arriving at its foregoing ultimate findings of fact. Although we would prefer that the findings more explicitly reflect the ana-

---

18. This finding was not expressly challenged by plaintiffs.

lytical steps taken, Cloud v. Standard Packaging Corp., 7 Cir., 376 F.2d 384, 391 (1967), we are satisfied in this case that the court applied the correct tests and reached the proper results. *See,* Howe v. General Motors Corp., 7 Cir., 401 F.2d 73, 74 (1968). Accordingly, the trial court's conclusions of invalidity for obviousness of the Rockwell patents '287 and '320 will be affirmed.

 There is only one finding relevant to the obviousness of the '451 patent. Finding 26 identifies the specific prior art relied on, Roy, Searle and King, and determines there is no difference between the structure called for in the claims over the disclosure of the prior art patents, if such claims are read as not requiring a metal spring. There is no finding to indicate that the level of the pertinent art was considered in relation to this patent. While analyzing obviousness and giving general expression to the ultimate resolution may be sufficient on rare occasions, we feel it is sounder procedure for a trial court to give verbal expression to each element of the Graham v. Deere test.[19] Cloud v. Standard Packaging Corp., 7 Cir., 376 F.2d 384, 391 (1967); *but cf.,* University of Illinois Foundation v. Blonder-Tongue Lab., Inc., 7 Cir., 422 F.2d 769, 778 (1970), cert. granted, 91 S.Ct. 101; Gass v. Montgomery Ward & Co., 7 Cir., 387 F.2d 129, 130 (1967). We conclude, therefore, that the findings relevant to Rockwell patent '451 are insufficient to support the district court's conclusion of obviousness.

## MISDESCRIPTION

Plaintiffs assert that the trial court's determinations of invalidity pursuant to Title 35 U.S.C.A. § 112, *supra,* because of vagueness, indefiniteness and misdescription are erroneous.

The last clause of claim 1 of '287 provides for "an operable member supported by the retainer means for relative motion between the retainer means and the member for coacting with said element and opening said valve." The specification does not use the term "retainer means" but states that the flange of the grommet "is clamped against the plunger housing \* \* \* by means of a spacing ring \* \* \* and screws \* \*" and again that the ring "supports the grommet. \* \* \*" Thus, the clause of the claim which calls for "a retainer means for the other of said flanges holding said other flange in leak-proof contact with the housing" must apply to the retainer ring. The retainer ring, however, does not support the "operable member," the plunger; rather the plunger is supported by the housing. There exists, therefore, a conflict between the specification and the claim language. The trial court's finding 12 reflects this conflict.

Claim 8 of '451 calls for "resilient means for urging said rubber flanges outwardly \* \* \*." Throughout the patent specification and the other claims, "outwardly" refers to a direction radial with respect to the longitudinal axis of the unit. Plaintiffs' expert, Jones, testified that metal rings pressing against the tubular portion of the grommets were the only structures shown in the device that forced the grommets "outwardly." The claims and the specifications do not call for the above rings to be "resilient." By the same token, if "resilient means" refers to the helical springs as contended by plaintiffs, it conflicts with the disclosure since the spring does not press the flanges "outwardly" but rather longitudinally along the axis of the unit. The trial court so found in finding 23.

Claim 1 of '451 describes a single grommet having flanges with the spring means pressing the flanges apart. The final clause requires that the movable valve element have means fastened with it *"for forcing the valve element into and*

---

19. We think that such procedure will "result in that uniformity and definiteness which Congress called for in the 1952 Act." Graham v. John Deere Co., 383 U.S. at 18, 86 S.Ct. at 694.

*out of contact* with the rubber valve flange *against said spring pressure.*" (Emphasis added.) There is nothing included in the enumeration which could force the valve element "out of contact" with the flange "against said spring pressure." The court agreed in its finding 22.

Claim 9 provides for, *inter alia*:

" * * * [A] rubber spring-pressed outwardly directed valve flange at one end as well as a ring supported rubber sealing flange at the other end of said member to control flow of fluid through said opening and around the outside of the valve flange, by the opening and closing thereof by means of the movable valve element. * * * "

The antecedent to the clause beginning with "to control flow of fluid * * * " is the ring supported rubber sealing flange which neither controls the flow of fluid nor is opened or closed by the movable valve element. The trial court so found in its finding of fact 24.

■ Patent claims, as a prerequisite to validity, must particularly point out and distinctly claim the subject matter which the patentee regards as his invention. Pambello v. Hamilton Cosco, Inc., 7 Cir., 377 F.2d 445, 447 (1967). Plaintiffs contend, however, that as to claim 1 of '287 there was at most only a slight ambiguity, not a fatal defect. Citing Strong-Scott Mfg. Co. v. Weller, 8 Cir., 112 F.2d 389 (1940), plaintiffs argue that if any ambiguity was created because of differences between the specifications and claims, the trial court had the duty of resolving the ambiguity in favor of the patentee, and that the patentee is allowed much latitude in terminology so long as the meaning intended can be ascertained from the context. The Supreme Court, however, in Halliburton Co. v. Walker, 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3 (1946), has expressed the policy to be followed in a case, such as the instant action, which involves concededly old elements in an allegedly new combination:

"Patents on machines which join old and well-known devices with the declared object of achieving new results, or patents which add an old element to improve a preexisting combination, easily lend themselves to abuse. And to prevent extension of a patent's scope beyond what was actually invented, courts have viewed claims to combinations and improvements or additions to them with very close scrutiny. [Citation omitted.] * * * It is quite consistent with this strict interpretation of patents for machines which combine old elements to require clear description in combination claims." 329 U.S. at 10, 67 S. Ct. at 11.

Moreover, plaintiffs on interrogatories, oral expert testimony and cross-examination adopted conflicting positions with respect to the final clause in claim 1. It would be difficult for the trial court to resolve an ambiguity that the patentee does not resolve.

■ The above findings of fact find ample support in the record. They may not be said to be clearly erroneous and demonstrate the vagueness, misdescription and ambiguity in plaintiffs' claim language. As in the instant case, the requirement of clarity is peculiarly applicable to claims which embrace combinations of old elements, and here the trial court's findings compel a conclusion of invalidity under Title 35 U.S. C.A. § 112, *supra*. Pambello v. Hamilton Cosco, Inc., *supra*, 377 F.2d at 447.

## NONINFRINGEMENT

Plaintiffs next contend that the trial court's holding of noninfringement was erroneous.

Claim 1 of the '287 patent is specifically concerned with an outlet port for the utilization of a fluid, controlled by a valve element which is actuated by an operable member that coacts with the element "to apply a force when operated for flexing said element and opening said valve." It is the thrust of the operating mechanism against the face of the sup-

port flange in the application of the brakes which distorts and flexes such flange so as to lift the valve flange from its seat on the retainer ring and open the air valve.

By contrast, in the actuation of the valve in defendant's Form B, the movement of the operator's foot pedal causes the operating member to move a movable valve seat away from the rubber valve member. The valve member is exposed to the atmosphere on one side and a vacuum on the other. Since it is a flexible diaphragm, the atmospheric pressure causes it to follow the movement of the plunger and valve seat until contact is made with a second fixed annular valve seat. Movement of the rubber element is stopped by abutment against the fixed seat and this abutment permits further movement of the movable valve seat away from the rubber element, opening the air port to the variable pressure chamber. The rubber element is flexed only by abutment with the plunger on the release stroke of the unit. At such time in the operation, the flexing permits the exhaustion of air by opening the vacuum valve.

Plaintiff seeks to avoid the difference in mode of operation by arguing that the vacuum and air chambers in the two units are merely reversed. Both the '287 device and the accused structure are vacuum suspended units, relying on the admission of air to a variable pressure chamber to operate the power wall. The difference between the operation of the units with respect to flexing the rubber element to open a valve—the air valve in the patent and the vacuum valve in the

accused device—is a difference in the operating sequence of the two units, not a reversal of parts. The above is reflected in the trial court's findings of fact and was substantiated by the testimony in the record. There has been no adequate showing that the findings are clearly erroneous.

Claims 1, 8 and 9 of '451 each require that the grommet valve be made of rubber and that it have spring-pressed flanges.[20] Defendant's Form B has no helical spring and no structure performing the equivalent function.[21] Finding 25 to that effect is substantiated by the testimony and is not clearly erroneous.

In claim 10 of the '320 patent, the claims describe "first" and "second" chambers which refer to the air and vacuum chambers respectively. In claiming infringement, plaintiffs apply these chambers to the vacuum and air chambers, respectively, of defendant's Form B, at the point of runout after power application. Again, plaintiffs argue that this is a mere reversal of chambers. But coming as it does in different points of the operation of vacuum suspended units, defendant's expert Groh testified that there was no reversal of chambers; rather there was a difference in structure and function.

Moreover, in plaintiffs' way of reading the claim, the word "normally" is employed for the closed position of the air valve in '320 (which would be the expected normal posture of a vacuum supported unit), but in applying the word normal to defendant's Form B, the closure of the vacuum valve is alleged to be

---

20. This is plaintiffs' asserted construction of the claims.

21. Plaintiffs argue that the "morning sickness" problem and solution indicate the existence of an equivalent spring structure. The valve flanges in defendant's Form B would tend to stick together on very cold mornings, causing the booster to fail. Sticky material in the crevice behind the valve flange from the manufacture of the members was traced as the cause of the sticking. The solution was to insert a non-stick teflon ring un-

der the steel washer that is imbedded in the backside of the valve flange. Plaintiffs contend that the utilization of the teflon ring is to assure that the springiness of the rubber can urge the flanges of the member apart. However, defendant's Form B is accused to infringe '451 with or without the teflon washer. The necessity of adopting the washer supports the inference that the "rubber memory" is not the equivalent of plaintiffs' mechanical spring.

normal. However, the vacuum valve in vacuum suspended units is "normally" open, that is, when the unit is at rest. The vacuum valve is closed when the brakes are being applied or after runout at the end of power application.[22] Finding 33 reflects the above observations with respect to claim 10 and has not been shown to be clearly erroneous.

 In short, the findings clearly point out and the record substantiates that the structure and operation of each of the three patents in suit differs from that of defendant's Form B. For this court to find infringement, there must be a substantial identity not only in result, but in structure and operation of the accused device and the patents in suit. Leach v. Badger, 7 Cir., 385 F.2d 193, 197 (1967); Elgin Manufacturing Corp. v. Ventfabrics, Inc., 7 Cir., 314 F.2d 440, 444 (1963); Universal Match Corp. v. New Castle Products, Inc., 7 Cir., 308 F.2d 842, 846 (1962). Since such identity was found lacking, the trial court correctly concluded that defendant's Form B did not infringe plaintiffs' patents.

### ATTORNEY FEES

We last consider the trial court's refusal to allow defendant's claim for attorney fees pursuant to Title 35 U.S.C.A. § 285.[23] Defendant claims that it should be awarded reasonable attorney fees because plaintiffs allegedly asserted the patents in suit in the hopes of coercing the payment of a tribute to avoid the expense of litigation. In support of its claim, defendant sets out in detail the actions of plaintiffs that it considers extraordinary circumstances sufficient to require the granting of such fees.

 The refusal to allow a prevailing party attorney fees in a suit for patent infringement is within the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of such discretion is shown. Amerline Corp. v. Cosmo Plastics Co., 7 Cir., 407 F.2d 666, 671 (1969).

 We have carefully reviewed the grounds asserted by defendants in support of their claim that this is an "exceptional case" and warrants the allowance of attorney fees. We conclude, on balance, that the district court did not abuse its discretion in refusing such allowance. On that issue, the judgment of the trial court will be affirmed.

From the view taken of this case, we deem it unnecessary to consider the issues relative to anticipation and novelty. Even though the trial court erred in ruling that patent '451 met the test of obviousness under 35 U.S.C.A. § 103, nonetheless the court's holding of invalidity of the patent must be sustained since invalidity was also based, and properly so, on misdescription and vagueness.

Affirmed.

---

**22.** Plaintiffs contend that "normal" in defendant's Form B is when the vacuum valve is closed because that occurs in three of its four possible positions. There was testimony that the valve would be open 99% of the time in a vacuum suspended unit because it is open when the unit is at rest. Moreover, in plaintiffs' vacuum suspended unit the vacuum valve is likewise open when the unit is at rest, the position in which the air valve is shown "normally closed."

**23.** Title 35 U.S.C.A. § 285 provides:
"The court in exceptional cases may award reasonable attorney fees to the prevailing party."